JOHN F. RHODES, Appellant, *vs.* ELIZA L. MEREDITH *et al.* Appellees.

*Opinion filed October 28, 1913.*

1. DEEDS—*heirs and devisees cannot attack conveyance merely because it was voluntary.* Where there are no creditors a husband has a legal right to make a voluntary conveyance to his wife through the medium of a third party, and heirs and devisees of the husband, who claim merely as volunteers, have no right to attack the conveyance to the third party upon the ground that it was without consideration and decreased the husband's estate.

2. EQUITY—*doctrine of equitable conversion.* The doctrine of equitable conversion rests upon the maxim that equity regards that as done which ought to be done, and under such doctrine real estate may, in a proper case, be regarded in equity as personal property and personal property be regarded as real estate.

3. SAME—*when proposed vendor is regarded in equity as trustee of the naked title.* Where a valid, enforcible contract for the sale of real estate has been made, equity, as between the vendor and vendee, regards the vendee as the owner of the land and the vendor as the owner of the purchase money and trustee of the naked legal title to the land for the benefit of the vendee.

4. SAME—*rule where vendor dies intestate before carrying out the contract of sale.* Where the owner of land makes a valid, enforcible contract for its sale but dies before the contract is carried out, without having made any other disposition of the land by will, the land, or whatever interest he has therein, will be regarded, under the doctrine of equitable conversion, as personal property, and will be treated as assets in the hands of his personal representative. (*Wright* v. *Minshall,* 72 Ill. 584, *Covey* v. *Dinsmoor,* 226 id. 438, and *Adams* v. *Peabody Coal Co.* 230 id. 469, explained.)

APPEAL from the Circuit Court of Kane county; the Hon. MAZZINI SLUSSER, Judge, presiding.

W. M. MERCER, for appellant.

ALDRICH & WORCESTER, M. O. SOUTHWORTH, and FRED C. G. SCHMIDT, for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

The circuit court of Kane county dismissed appellant's bill for partition for want of equity, and the record has been brought to this court by an appeal.

The real estate involved formerly belonged to Joshua Rhodes, and all parties in interest claim, in one way or another, from him. Rhodes died in Kane county, Illinois, December 19, 1910, leaving Addie M. Rhodes as his widow, and Martha Sheldon Rhodes, who claims to be his daughter by adoption. He also left John F. Rhodes, a brother, and a number of sisters and descendants of deceased sisters, as his collateral heirs. On April 25, 1885, Rhodes and his wife, Addie M., conveyed a portion of the premises in controversy to Maria H. Severance, and within a few days thereafter Maria Severance re-conveyed the same premises to Addie M. Rhodes. Neither of these deeds was recorded until the 10th day of January, 1911. No change was made in the possession of the premises in pursuance of these deeds. These conveyances were manifestly only resorted to as a means of transferring the title from Rhodes to his wife. On the 11th of August, 1910, Rhodes executed a contract of bargain and sale of the farm in controversy to A. D. Hanna for the sum of $25,725. The contract was in writing, and provided for the payment of $5725 in cash March 1, 1911, and the execution of notes and a mortgage for the remainder. Rhodes covenanted to convey the premises by a good merchantable title and surrender possession to the purchaser on that date. The con-

tract of sale included that portion of the farm to which his wife claimed title under the unrecorded deed, as well as the remainder, the title to which was in the name of Rhodes. Hanna was in the possession of the farm under a lease at the time the contract of sale was executed, and the date fixed for the consummation of the sale contract was the date on which the lease, by its terms, would expire. After the death of Rhodes, his widow, as administratrix, filed a bill in equity to the May term, 1911, of the circuit court of Kane county, in which she recited the making of the contract with Hanna by her husband, and alleged that she, as administratrix and individually, was ready and willing to comply with its terms by executing a deed to Hanna conveying to him the entire premises upon compliance with the contract by him. The bill alleged that Martha Sheldon Rhodes was the legally adopted daughter of Joshua Rhodes and entitled to inherit from him the same as a natural child. Hanna and the adopted daughter, then a minor twelve years of age, were made defendants to the bill. The prayer of the bill was that a decree for specific performance of said contract be granted, and that the court determine the amount that should be paid to the widow in her individual capacity and what portion she should charge herself with as administratrix. A decree was entered upon said bill finding that the value of that portion of the farm to which the widow held title was $14,950 and that the residue was worth $10,775. A decree was entered for the specific performance of the contract. The widow was ordered and directed to make a deed to said Hanna to the whole of said premises upon his complying with the terms of the contract. Hanna complied with the contract and a deed purporting to convey to him the fee simple title of the entire farm was executed, under which he claims to be the sole and exclusive owner of all the premises described in the deed. The decree granting specific performance of the contract, in pursuance of which the widow executed a deed

to Hanna, has never been reversed or modified and remains in full force and effect. On May 31, 1912, the appellant, John F. Rhodes, a brother of Joshua Rhodes, filed his bill in the case at bar for partition. Addie M. Rhodes, (individually and as administratrix of Joshua Rhodes, together with his surviving sisters and the children of such as were dead,) Martha S. Rhodes, and certain other persons who were in possession of some portion of the premises, were made parties defendant to the appellant's bill. Briefly, the theory of the bill is that the deed from Joshua Rhodes and wife to Maria Severance, and the deed from Maria Severance to Addie M. Rhodes, never became operative for want of delivery in the lifetime of Joshua Rhodes; that Martha Sheldon Rhodes was never legally adopted as the daughter of said Joshua and Addie M. Rhodes and has no interest whatever in his estate; that the contract for the sale of the premises involved, to Hanna, not having been performed and a conveyance made prior to the death of Joshua Rhodes, said Rhodes was at the time of his death the legal owner of the farm in controversy, and having died intestate, leaving no child or children or descendants of such child or children, the land descended as real estate to appellant and the other collateral heirs of said Joshua Rhodes.

There is nothing in the record to support the contention that the deed from Joshua Rhodes and wife to Mrs. Severance, and the deed from her to Mrs. Rhodes, were void for want of delivery. Mrs. Severance testifies that she paid nothing for her deed and received nothing when she reconveyed to Mrs. Rhodes; that she held the deed from the time it was made until she re-conveyed to Mrs. Rhodes. It is a fair and reasonable inference from the evidence that Joshua Rhodes intended to make a settlement upon his wife by giving her the north eighty acres of his farm and that the conveyance to Mrs. Severance was merely a convenient means adopted to accomplish his purpose. That he had a legal right to make a suitable provision for his wife

where there are no creditors to complain cannot be questioned. Heirs and devisees who claim merely as volunteers have no right to attack such conveyance on the ground that it was voluntary and had the effect of decreasing the estate to which they would be entitled upon the death of the grantor, but so far as the rights of Hanna and the collateral heirs are concerned, they cannot be affected by the determination of the question raised in respect to the delivery of the Severance deeds. If the deeds were not delivered, then the title to the whole premises was in Joshua Rhodes at the time he made the contract of sale with Hanna, and that contract entitled Hanna to a deed for the whole of the premises upon compliance with its terms. If the deeds were delivered and Mrs. Rhodes became the owner of the north eighty acres prior to the execution of the contract with Hanna, while she did not sign the contract she knew that the sale had been made, was present at the time, and set up no claim under her unrecorded deed and made no objection to the inclusion of the north eighty in the sale. Beside thus estopping herself as against Hanna, who had no notice that she claimed any interest in fee in the premises, she has ratified and confirmed the sale by filing the bill for specific performance, in which she offered to convey, and by procuring a decree under which she has actually conveyed the whole of said premises pursuant to the contract made by her husband. Hanna was entitled, under his contract, to the fee simple title to the entire farm, and this he obtained either by the deed made by Mrs. Rhodes as administratrix, or partly through that deed and partly through her deed in her individual capacity. In either event the title vested in him and his contract was satisfied.

Whatever of controversy may remain to be settled among the heirs of Joshua Rhodes, it must be held that Hanna is entitled to hold the land under his deed, unmolested by any of the conflicting claims to the purchase money. If, as we have sought to show, Hanna must at all

events be held to be the exclusive owner of the real estate in controversy, this would be a complete defense to the prayer of appellant's bill for a partition. There can be no partition of this land among the heirs of Joshua Rhodes without setting aside the contract of sale, the decree for the specific performance thereof, and the deed made to Hanna in execution of the decree, and we see no grounds for disturbing either.

Again, the situation presented by this record requires the application of the doctrine of equitable conversion. That doctrine rests on the maxim that equity regards that as done which ought to be done, and the situation presented by this record is a fitting illustration of the maxim. Under that rule real estate may, under proper circumstances, be regarded, in equity, as personal property and personal estate may be regarded as real, and transmissible and descendible as such. (Eaton on Equity, sec. 96; *Haward* v. *Peavey,* 128 Ill. 430.) When a valid, enforcible contract has been entered into for the sale of real estate, as between the vendor and vendee equity regards the vendee as the owner of the land and the vendor as the owner of the purchase money, which is personalty. The vendor is regarded as the trustee of the naked legal title for the benefit of the vendee, and the vendee as the trustee of the purchase money for the benefit of the vendor. (*Lombard* v. *Chicago Sinai Congregation,* 64 Ill. 477; *Wright* v. *Troutman,* 81 id. 374; *Lewis* v. *Shearer,* 189 id. 184.) Where the owner of real estate thus enters into a valid contract for its sale, the nature of his estate under the doctrine of equitable conversion is changed and the real estate will be regarded as converted into personal property, and, in case of the death of the vendor before the contract is performed, it will be treated as assets in the hands of his personal representative. 9 Cyc. 826; *Keep* v. *Miller,* 42 N. J. Eq. 100; 6 Atl. Rep. 495; *Williams* v. *Haddock,* 145 N. Y. 144; 39 N. E. Rep. 825; *Bender* v. *Luckenbach,* 162 Pa. St. 18; 29 Atl. Rep. 295.

The cases of *Wright* v. *Minshall,* 72 Ill. 584, *Covey* v. *Dinsmoor,* 226 id. 438, and *Adams* v. *Peabody Coal Co.* 230 id. 469, do not establish any different doctrine. They were all cases involving the construction of wills. In each of them the testator had contracted to sell real estate which was also disposed of by the will. The doctrine of equitable conversion was not allowed to interfere with the clearly expressed intention of the testators. While the contracts for the conveyance of the real estate were sustained, the proceeds were treated as real estate and passed as such to the respective devisees under the wills. The reason the doctrine of equitable conversion was not applied in those cases was, that it would have defeated the intention of the testators as the same was gathered from the general context of the wills involved. But in the case at bar the vendor of the real estate died intestate. There is nothing here to prevent the full operation of the doctrine of equitable conversion. Applying that doctrine, Joshua Rhodes owned none of the real estate at the time of his death which in this proceeding is sought to be partitioned among his collateral heirs. Instead of the real estate, at the time of his death he owned the obligation of Hanna to pay the consideration, and this was personalty, and as such belongs to the administratrix, to be by her disposed of and distributed in due course of administration. It makes no difference whether Joshua Rhodes owned all of the farm or only a part and his wife the remainder. The contract was valid and enforcible, and the doctrine of equitable conversion applies to and converts whatever interest Joshua Rhodes had in the land into personal property. Under this view, the question whether Martha S. Rhodes is the legally adopted daughter of Joshua Rhodes becomes unimportant. If she be the adopted daughter, then the personal estate of her adoptive father would, under the Statute of Descent, pass to her and the widow. If she was not legally adopted, then Joshua Rhodes died leaving no child or children or descendants of

such child or children, and the widow, in that contingency, would be entitled to all of the personal property. In any view that can be taken of this question the collateral heirs can have no interest in the personal estate of Joshua Rhodes. The only persons now that can have any interest in the question in respect to the adoption of Martha S. Rhodes are the widow and Martha S. Rhodes, and neither of them is making any question as to the regularity and binding effect of the adoption proceeding.

The circuit court of Kane county did not err in dismissing appellant's bill, and its decree will accordingly be affirmed.

*Decree affirmed.*