Max EDLIN and Ida Edlin, Plaintiffs-Appellants,

v.

SECURITY INSURANCE COMPANY et al., corporations, Defendants-Appellees.

PEORIA HOUSING AUTHORITY, Intervening Petitioner-Appellant,

v.

SECURITY INSURANCE COMPANY et al., corporations, Defendants-Appellees.

Nos. 12308, 12309.

United States Court of Appeals Seventh Circuit.

June 4, 1959.

Rehearing Denied Aug. 17, 1959.

Willard B. Gaskins and E. V. Champion, Peoria, Ill., for Peoria Housing Authority, intervening petitioner-plaintiff-appellant.

John E. Cassidy, John E. Cassidy, Jr., Peoria, Ill., for Edlin et al.

John P. Gorman, Chicago, Ill., Eugene R. Johnson, Peoria, Ill., Donald N. Clausen, Clausen, Hirsh, Miller & Gorman, Chicago, Ill., Miller, Westervelt, Johnson & Thomason, Peoria, Ill., for appellees.

Before FINNEGAN,[1] SCHNACKENBERG and HASTINGS, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

These appeals, by Max Edlin and Ida Edlin (plaintiffs below), and Peoria Housing Authority, a municipal corporation of Illinois (herein called the Authority), respectively, were heard together in this court. The defendants in both cases are the following insurance companies: Security Insurance Company, Philadelphia Fire and Marine Insurance Company, The Home Insurance Company, The Standard Fire Insurance Company and Milwaukee Mechanics' Insurance Company (herein referred to as insurers). In No. 12309, Max Edlin and Ida Edlin are also named as defendants.

We now state the relevant facts as they appear in the Edlins' complaint and insurers' answer.

The Edlins were on September 3, 1952 the owners of a building in Peoria, Illinois, and the real estate upon which it was located. On that date the Authority, pursuant to the Illinois law of eminent domain, filed in the county court at Peoria a petition to condemn said property, making the Edlins parties defendant thereto.

Prior to September 3, 1952, the insurers issued their respective fire insurance policies to the Edlins covering said building. On November 28, 1952, and while said policies were in effect, a fire totally destroyed said building, the loss sustained amounting to more than the aggregate sums of all of said policies.

The value of said premises was, for the purpose of the condemnation suit, determined at a trial in said county court,

---

1. Judge FINNEGAN died before this opinion was prepared.

commencing on January 6, 1953 and culminating in an order on January 20, 1953 fixing $43,500 as the fair cash market value of said premises, at its highest and best use, as of September 3, 1952. The Authority immediately caused said amount to be paid to the Edlins, which was accepted by them.

The insurers' answer to the Edlins' complaint averred, *inter alia,* that the Edlins sustained no pecuniary loss or damage by reason of the fire, because of the condemnation proceedings and the payment of said sum of $43,500 by the Authority to the Edlins.

On July 1, 1954, the Authority filed a complaint as intervener, seeking a determination that the insurance proceeds be held for its use.

On October 7, 1957, the insurers made a motion for judgment in their favor upon the pleadings[2] upon the ground that the Edlins, "having sustained no pecuniary loss by reason of the fire", are not entitled to recover under the policies of insurance sued upon. The district court, in its opinion, sustained this motion, 160 F.Supp. 487, and entered an order to that effect, from which order the Edlins have appealed.[3]

■ The substantive law of Illinois applies to this case.

The Edlins contend that they did suffer a loss under the policies issued to them by the insurers. On the other hand, the insurers take this position:

A contract of fire insurance is a contract of indemnity and where, as in the instant case, the insured has sustained no pecuniary loss by reason of the fire, he is entitled to no recovery under the policy of insurance sued upon. The Edlins, having been paid the full value of the property in question as of a date preceding the date of fire without diminution or depreciation because of damage by fire or otherwise, sustained no pecuniary or actual loss by reason of the fire and are therefore not entitled to indemnity under the policies sued upon.

Their view, they say, is based squarely upon the doctrine of indemnity. They rely on Illinois Mutual Fire Ins. Co. v. Andes Insurance Co., 67 Ill. 362, and several Illinois Appellate Court cases, including Beman v. Springfield Fire & Marine Ins. Co., 303 Ill.App. 554, 25 N.E.2d 603.

As to the Authority, it contends that the Edlins did suffer a loss under their policies at the time the fire occurred, and that the Authority is entitled under the doctrine of equitable subrogation to the proceeds thereof to reimburse it for money which it was required to pay, under the condemnation proceedings, for the buildings as they stood before the fire.

All parties agree that the question of law involved is whether the policies "only indemnified the named insured against financial loss and that therefore the Edlins suffered no such loss, as a result of the fire, because of the later payment by Peoria Housing Authority to the Edlins of the amount so determined by virtue of the condemnation proceedings."

■ According to Illinois law, the value of property sought to be condemned is to be determined as of the date of the filing of the petition, without regard to any increase or decrease in the value of the property between that date and the date of trial, or the date of judgment or the date of payment. Sanitary District of Chicago v. Chapin, 226 Ill. 499, 80 N.E. 1017; City of Chicago v. Farwell, 286 Ill. 415, 121 N.E. 795; Forest Preserve District of Cook County v. Eckhoff, 372 Ill. 391, 24 N.E.2d 52; and Eckhoff v. Forest Preserve District, 377 Ill. 208, 36 N.E.2d 245.

Therefore, for the purposes of this case, we must assume that the value of the insured property was fixed by the county court as of September 3, 1952

---

2. See 28 U.S.C.A. rule 12(c).

3. The Edlins also appealed from an order which had permitted the Authority to intervene.

and that the court did not take into account any decrease in value of the property by reason of the fire of November 28, 1952. Accordingly, the insurers argue that the Edlins sustained no pecuniary loss by reason of the fire and that they are therefore not entitled under the policies to any sum for the physical damage which the property sustained.

The insurers contend that the district court was correct in refusing to depart from the basic doctrine of indemnity and in refusing to allow recovery for an alleged loss which, in fact, was no loss to the Edlins, thus recognizing that a departure from the doctrine of indemnity would sanction a gambling contract and, therefore, would be against public policy.

In First National Bank of Highland Park v. Boston Insurance Co.,[4] Ill., 160 N.E.2d 802, 804, the insurers took a similar position. The court, said:

"The position of the insurers is that a contract of insurance is a personal contract of indemnity and that in no event is an insured entitled to be paid more than his actual pecuniary loss. They point out that the public policy against wagering contracts has always dictated that casualty insurance be limited to indemnity, and they urge that fire insurance must be so limited lest the lure of profit by means of insurance should increase the hazard of arson. They rely upon the clause of the policy which limits recovery to the extent of the insured's interest, and they argue that the insurable interest of a vendor in an executory contract for the sale of realty can not exceed the balance of the unpaid purchase price. That amount, they say, would fully indemnify him; more would unjustly enrich him. The argument is based in part upon the doctrine of equitable conversion:

'When a valid, enforceable contract has been entered into for the sale of real estate, as between the vendor and vendee equity regards the vendee as the owner of the land and the vendor as the owner of the purchase money, which is personalty.' Rhodes v. Meredith, 260 Ill. 138, 143, 102 N.E. 1063, 1065."

However, the court said that there were several defects in the position of the insurers. The court pointed out that the obligation of a contract for the sale of land is not a perfect one and that the vendee may, or may not, be able to pay the purchase price.[5]

The court in the First National Bank case, discussed the meaning of the word "interest" in a clause in the policy which provided that the insured was not to be indemnified "in any event for more than the interest of the insured". Citing, as the leading case in Illinois, Budelman v. American Insurance Co., 297 Ill. 222, 130 N.E. 513, the court said, 160 N.E.2d 805:

"There the insured had entered into an executory contract to sell the property on installments. The insurer contended that the policy had become void prior to the fire by reason of the change in the interest of the assured that resulted from his contract to sell. * * * 'The risk of the property remains with the title, and the contract is personal with the vendor; the loss or destruction of the property falling upon him as the owner. 'Interest,' as used in the alienation clause of this policy, means legal interest, and therefore is retained by the party holding the legal title.' "

In the case at bar the risk of destruction of the insured property by fire remained with the title and the con-

4. Illinois Supreme Court No. 34906, May 22, 1959.

5. It should be noted that a condemnor, in Illinois, has a right to abandon its condemnation suit, if it will pay the costs, expenses, and reasonable attorneys' fees expended or incurred by the property owner. § 10, ch. 47, Ill.R.S. 1951, Department of Public Works and Buildings v. O'Brien, 402 Ill. 89, 91, 83 N.E.2d 280, 281.

tract of insurance was personal to the Edlins. Upon them the fire loss fell. At the time of the fire they, as holders of the legal title, possessed a legal interest in the property destroyed, and they became entitled to the proceeds of the policies.

We, therefore, hold that the Edlins did suffer a loss under the policies issued by the insurers, which loss amounted to more than the aggregate sums of all of said policies and that the insurers are liable to the Edlins on their policies.

■ This holding, however, is subject to the disposition (which we now will make) of the claim of the Authority for reimbursement for the money paid· to the Edlins pursuant to the condemnation proceedings. It relies upon the doctrine of equitable subrogation which, it says, requires such payment to it "in equity and good conscience and to avoid unjust enrichment."

We cannot agree with this contention of the Authority. The right of the Edlins to recover against the insurers is contractual in its nature, based upon the policies. Those policies never became the property of the Authority. If the Authority wished to protect itself against a fire loss on the condemned premises, it might have insured whatever interest it acquired by the filing of the condemnation proceeding. Having neglected to protect itself against such a contingency, it cannot expect a court to apply the owners' fire insurance policies for the benefit of the Authority. Moreover, after the fire, the Authority had a right to abandon the proceeding, under § 10, ch. 47, R.S.Ill.1951. This it failed to do. If it had done so, it would not be in its present situation.[6]

We hold that the Authority has no legal claim to the proceeds of the policies in this case.

For these reasons, in No. 12308, the judgment of the district court is re- versed, as to the insurers, and this cause is remanded to that court for further proceedings consistent with the views herein expressed, and in No. 12309, the judgment of the district court is affirmed as to the Peoria Housing Authority, intervening petitioner.

In No. 12308, reversed and remanded.

In No. 12309, affirmed.

---

6. In addition, it might possibly have protected itself against the fire loss in this case by acquiring, by the exercise of the right of eminent domain, the Edlins' interest as insured in the outstanding poli- cies issued by the insurers. See § 8, ch. 67½, R.S.Ill.1951. Whether or not this was legally possible, at least it might have been explored by an alert condemnor.