## DeWitt W. Smith, Individually and for use of Inter-Ocean Casualty Company, Appellee, v. Allemannia Fire Insurance Company of Pittsburg et al., Appellants.

1. INSURANCE, § 222*—*what is effect of representation of value where loss occurs subsequently.* A representation by agents of fire insurance companies, as to the value of a building, made in June, 1916, could not operate as a representation of its value at the time of a fire in March, 1918.

2. EQUITY, § 59*—*when equity has jurisdiction because of multiplicity of suits.* Equity had jurisdiction to prevent a multiplicity of suits in a suit on twenty-two fire insurance policies issued to complainant by seventeen defendants, by reason of a mere community of interest in the questions of law and fact involved in the general controversy.

3. INJUNCTION, § 20*—*when equity has no jurisdiction.* Equity does not have jurisdiction of a suit sought to be maintained by fire insurance companies to enjoin the assured from maintaining actions at law.

4. INSURANCE, § 426*—*how value of property destroyed is determined.* The market value of a building was not the test in determining the amount of recovery for the destruction of a building, under a clause providing that the companies should not be liable beyond the actual cost value of the insured property with proper deductions for depreciation.

5. INSURANCE, § 426*—*what is actual cash value of property destroyed.* Actual cash value of an insured building means reproduction value less depreciation for age, and not market value.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Smith v. Allemannia Fire Ins. Co. of Pittsburg, 219 Ill. App. 506.

6. Costs, § 79*—*when costs on appeal may be apportioned.* Where a decree against seventeen fire insurance companies provided for a joint and several appeal, and each defendant prosecuted an appeal and filed a record, and then all asked to have the appeal consolidated and this was done, appellee, on reversal, was required to pay the cost of only the first appeal, and appellants the cost of the remaining appeals.

Appeal from the Circuit Court of Sangamon county; the Hon. NORMAN L. JONES, Judge, presiding. Heard in this court at the April term, 1919. Reversed and remanded with directions. Opinion filed April 27, 1920. Refiled October 5, 1920.

BATES, HICKS & FOLONIE, SEYMOUR EDGERTON and PATTON & PATTON, for appellants.

GEORGE B. GILLESPIE, CONKLING & IRWIN and CLAYTON J. BARBER, for appellee.

MR. PRESIDING JUSTICE WAGGONER delivered the opinion of the court.

Appellee, DeWitt W. Smith, filed a bill in chancery to recover on twenty-two fire insurance policies issued to him by the seventeen defendants. The amounts of the policies aggregated $86,000. The court awarded him $78,409.26, and entered a decree apportioning that amount against the several appellants under the different policies.

An entry of appearance and disclaimer of the Woodmen's Casualty Company, Inter-Ocean Life and Casualty Company, and the Inter-Ocean Casualty Company has been filed thereby eliminating the question raised relative to a want of necessary parties.

The insured property in question consisted of a seven-story and basement store and office building, seventy by one hundred and ten feet, with a two-story superstructure that was twenty-eight by forty feet, and with two additions to the main building of two

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

stories each, one being called the Annex and the other the Addition. The building is situated at the corner of Fourth and Monroe Streets in the City of Springfield, Illinois, and is known as the DeWitt Smith building. On March 12, 1918, a fire occurred in the building, which destroyed the eighth and ninth story superstructure, badly damaged the sixth and seventh floors, and burned at places through the ceiling of the fifth floor. The remaining portion of the main building was damaged by water.

Appellee claimed a loss of $87,809.40 on a building which he contends was worth from $80,000 to $90,000. Appellants claimed that the building was worth $150,000 and that the damages done to it amounted to $52,039.96. The insurance policies all contained reduced rate average clauses, four of them at eighty per cent, and the remainder of them at ninety per cent. Appellants further claimed that, under these facts, they were not liable for more than $30,000 of the loss. With this disagreement, between the parties, in reference to the value of the building and the amount of insurance for which the companies were liable, a bill in equity was filed, by appellee, against all the appellants.

Appellants contend that a court of equity is without jurisdiction in this cause, and should have dismissed the bill for that reason. Appellee maintains that the court has jurisdiction, for the purpose of preventing a multiplicity of suits, to apportion the amount of the loss among the several companies, and to enforce an estoppel to dispute the valuation placed on the building.

The claim of an estoppel grows out of the contention of the appellee that in June, 1916, Dr. John W. Scott and John Lamphier, agents representing some of the appellants, solicited him to increase his insurance on the property in question, and told appellee that by having a 90 per cent rate clause in his policy he could affect an economy in the amount of premium paid as

compared with the amount of the insurance carried. They called appellee's attention to a settlement of a small loss previously sustained, and stated that in the adjustment of such loss the insurance companies valued the property at $90,000, and that if appellee would carry $81,000 insurance, he would be fully indemnified up to $81,000. Later in the argument of the case appellee abandons the position taken in regard to an estoppel to dispute the value of the building. Appellee, in his brief, says: "The court below held that the value of the building was shown by the testimony to be not more than ten per cent in excess of the amount of insurance carried, but did not base that conclusion on any estoppel, and applied the valuation equally to those companies against whom complainant sought to establish an estoppel and those to whom such estoppel would not apply. So it is wholly immaterial whether this evidence was in the record or not. Clearly the court did not consider it for the condition of the proof was such that he had no occasion to apply the doctrine of estoppel." This statement of appellee is correct, and the admission therein contained eliminates the question of estoppel. Further, a representation as to the value of the building in June, 1916, could not operate as a representation of the value of the building at the time of the fire in March, 1918.

Appellee contends that a mere community of interest in the question of law and fact involved in the general controversy is sufficient to give a court of equity jurisdiction to prevent a multiplicity of suits, and in support of such contention cites Pomeroy's Equity Jurisprudence, secs. 268-269. It is true that this author takes this view of the matter, and cites many authorities in support of it. His position is fully discussed and criticized in *Tribette v. Illinois Cent. R. Co.*, 70 Miss. 182, which is the leading case on the subject holding a contrary view. While there may have been

some temporary departure from the *Tribette* case, the rule therein announced is subsequently adhered to in *Cumberland Tel. & Tel. Co. v. Williamson,* 101 Miss. 1. To enter into a general discussion of the matter would be like carrying coals to Newcastle. We can add nothing to either of the two views so ably stated by these authorities. After a careful consideration of the matter we are constrained to follow the rule announced by Pomeroy, believing that it is supported by the decided weight of authority, and hold that the chancellor did not err in assuming jurisdiction of this suit. This case is to be carefully distinguished, however, from a suit sought to be maintained by insurance companies to enjoin the assured from maintaining actions at law. In such cases equity does not have jurisdiction. 10 R. C. L. p. 286, par. 30, and note 13.

As before stated, all the insurance policies on the property in question contained reduced rate average clauses, four of them at eighty and eighteen at ninety per cent. These clauses provide that the "company shall be held liable for no greater proportion of any loss than the amount hereby insured bears to ninety (or eighty) per cent of the actual cash value of the property described herein at the time when such loss shall happen." As a result of this clause in eighteen of such policies, if the property is not insured for at least ninety per cent of its value, the companies issuing such eighteen policies are only liable for such a proportion of the loss as the amount of insurance bears to ninety per cent of the actual cash value of the property. Under the remaining four policies, if the property be not insured for at least eighty per cent of its value, the liability of the companies issuing such last policies would be the proportion of the loss that the amount of insurance bears to eighty per cent of the actual cash value of the property. As a result of the reduced rate clause eighteen of the insurance policies, if the property was not insured for at least ninety per

cent of its value, such companies would only be liable for such proportion of a loss as the amount insured bears to ninety per cent of the actual cash value of the property. The total amount of the insurance was $86,000. Hence it was imperative, in order for appellee to recover in full, that he establish that $86,000 was at least ninety per cent of the value of the property. A failure to establish such a fact would result in appellee's being obliged to share a proportionate part of the loss. In the brief filed by appellee, he takes the position that actual cash value means the fair market value, while appellants claimed that actual cash value means reproduction value less depreciation for age, and fixed the reproduction value, less depreciation, at $150,000. The only evidence in the case of market value is the testimony of appellee's witnesses, a majority of whom placed a value on the building of from $85,000 to $95,000, one witness placing the value as low as $80,000 and another at $100,000. On the other hand, when it came to the matter of valuing the destroyed and damaged parts of the building, appellee then claimed restoration or reproduction value without allowance for depreciation of the parts destroyed. The most extravagant estimate possible under the evidence contained in the record would not justify a claim that the damages exceeded one-half the value of the building, yet the court assessed damages to the amount of $78,409.26 on a building which appellee offered evidence of value as low as $80,000. On that basis, the remaining portions of the building, consisting of the Annex, the Addition and five stories of the main building, in the condition shown by the evidence, would be worth only $1,590.74 under appellee's claim. Such results are absurd. It is self-evident that a theory that produces such results is wrong in principle and that evidence offered in support of it is unworthy of consideration.

The policies further provide that the companies shall not be liable beyond the actual cash value of the property insured with proper deductions for depreciation. Cooley in his Briefs on the Law of Insurance, vol. 4, p. 3081, states the rule as follows: "If the property destroyed is a building, the measure of damages is not the market value of the building at the time of the loss, nor what some one would have paid for the building, but the actual value of the property at the time of the loss, as the insured is entitled to be indemnified for the loss sustained. The market value cannot be used as the test in determining the amount of recovery for the destruction of a building for various reasons. If there was no market demand for the property so it could be sold, it would have no value, and consequently there would be no loss. A farmer might have an insured building of the value of $5,000 on a farm, and yet be held to have sustained no loss by its destruction because there was no demand for land in the location, and the farm could not have been sold. If not salable at all, it might have a value to the owner as a home for himself and family or for business purposes. Again, the market value of some buildings (as, for instance, tenement houses) may be much greater than their actual value. Besides the market value rule would render it almost, if not quite, impossible in many cases to determine the amount of a loss. A building and the land on which it is built may have a joint market value entirely different from what the aggregate would amount to if they were to be considered separately and detached from each other." The rule as announced by this writer is supported by the cases of *Hegard v. California Ins. Co.,* 72 Cal. 535; *State Ins. Co. v. Taylor,* 14 Colo. 499; *Aetna Ins. Co. v. Johnson,* 11 Bush (Ky.) 588 (21 Am. Rep. 223); *Stenzel v. Pennsylvania Fire Ins. Co.,* 110 La. 1019 (98 Am. St. Rep. 481).

Since it will be necessary to reverse the decree ren-

dered in this cause, for the reason that the trial court erred in assessing the damages, it will not be necessary to consider other errors assigned. Appellee under his policies is entitled to be indemnified hence actual cash value means reproduction value less depreciation for age and not market value.

The decree provides for a joint and several appeal. Appellants each prosecuted an appeal, filed seventeen records in this court, then asked to have the appeals consolidated, and the same was done. The same end would have been accomplished by a joint appeal. The cost in the first case on the docket of this court, being No. 7033, entitled *DeWitt W. Smith v. Allemannia Fire Ins. Co.*, should be paid by appellee, and the cost in the remaining cases by the various appellants. Motion by appellee to tax cost of additional abstract against appellants is denied.

The decree is reversed and the cause is remanded with directions to proceed in accordance with the views herein expressed.

*Reversed and remanded with directions.*