**Frank F. W. KNUPPEL, Plaintiff-Appellee,**

**v.**

**AMERICAN INSURANCE COMPANY, and North River Insurance Company, Defendants-Appellants.**

**No. 12584.**

United States Court of Appeals Seventh Circuit.

June 25, 1959.

Rehearing Denied Aug. 31, 1959.

---

**164**

Samuel Levin, Chicago, Ill., for appellant.

Frank J. McGarr, Chicago, Ill., for appellee.

Before DUFFY, Chief Judge and HASTINGS and CASTLE, Circuit Judges.

CASTLE, Circuit Judge.

This action was brought by Frank F. W. Knuppel, plaintiff-appellee, against The American Insurance Company, and North River Insurance Company, defendants-appellants, to recover on two policies of fire insurance issued by the respective companies covering a building occupied as a restaurant and tavern and the furniture and fixtures contained therein. The parties will be identified as plaintiff and insurers.

The case was heard without a jury and the District Court entered judgment in the amount of $17,500 ($8,750 against each of the insurers) plus interest at the rate of 5 per cent and costs. The insurers appealed contending that the trial Court erred in its conclusions of law that (1) the actual cash value of the building is to be determined by its reproduction value on the date of the fire less depreciation for age at that time, and (2) that any intention or decision of the plaintiff prior to the fire to remove or tear down the building, or any contract or commitment to do so, has no bearing upon determining the actual cash value of the property and is incompetent, immaterial and irrelevant. The insurers also predicate error on the trial court's findings of fact with respect to the extent of damage and the value of the property, and its conclusion of law that plaintiff was competent to testify as to the value of furniture and fixtures destroyed in the fire.

The insured structure was a one story, concrete foundation, frame building with a basement under two-thirds of its area. Although plaintiff when first referring to the size of the building said it was 30 by 60 feet he later testified it could be 40 by 60 feet. The building was 40 by 60 feet and contained 2400 square feet according to witness Zerante, an architect, who examined the site and made a reconstruction drawing after the fire. It was located on the southwest corner of the intersection of Court Street and Walnut Street (Highway 54) in Monee, Illinois. Part of the structure had been

erected in the early 1930's for restaurant and tavern purposes. Plaintiff purchased it in 1938 and approximately doubled its size by an addition in 1946–7. The interior consisted of a bar room, lunch room, dining room, kitchen and two lavatories. Throughout the building there was typical restaurant, cafe and bar equipment. Some of the equipment dated back to the time of plaintiff's purchase in 1938, but a substantial portion of it was acquired at the time of the remodeling in 1946–7. All of the equipment, except four broken chairs stored in the attic, was in good condition.

The building occupied part of a lot, the balance of which, together with an adjacent lot also owned by plaintiff was occupied by a service station. Plaintiff operated the restaurant and tavern until 1948 when he commenced to lease the building, fixtures and equipment to others who operated the business. In 1941 plaintiff purchased a building across the street on the northwest corner of the intersection and in June or July of 1956 commenced to remodel this building for restaurant and tavern use. The bar in this new tavern and restaurant was to have a similar layout to that in the insured structure and plaintiff intended to remove fixtures which were useable to the remodeled restaurant and tavern. His current tenant was to operate the restaurant and tavern in the new location when the remodeling was completed.

The fire occurred during the evening of August 5, 1956. The bar room walls were burned, one completely through, and both the floor and ceiling had collapsed and fallen through to the basement. One side of the roof was burned through and the other side had three holes chopped through by firemen. Many of the windows were smashed. The walls in the toilets were burned. The kitchen and dining room walls were wet and smoked and the kitchen floor had slanted and a refrigerator and steam table had fallen through to the basement which contained several feet of water. The few items salvaged were sold for $20.00, except for a table and beverage cooler plaintiff removed. Witness Albers, an insurance broker for defendant companies, testified that the loss was "practically a total loss".

The policy of each of the insurers was in the amount of not to exceed $10,000 covering its pro-rated proportion of any loss not exceeding $14,000 on the building, $2500 on restaurant furniture and fixtures, and $3500 on tavern furniture and fixtures.

Each of the policies insured the plaintiff " * * * to the extent of the actual cash value of the property at the time of the loss * * * ".

There was conflicting testimony as to the value of the building. Likewise there was a conflict in the testimony as to whether or not the plaintiff had intended to have the insured building removed after completion of the remodeling of the new restaurant-tavern location. An adjuster for the insurers testified that plaintiff told him that he was going to have the building removed and was negotiating to include the site in the lease of the adjacent property for service station purposes. Plaintiff, however, testified that he was considering various possibilities, but at the time of the fire was undecided. He had however obtained a proposal from a contractor in which the latter offered to remove the building for $200, the plaintiff to retain and remove certain fixtures, including the bar and the lavatory fixtures, all remaining items and the building to become the property of the contractor. Subsequent to the fire the basement was filled in and the site leveled at a cost of $200 to the plaintiff. Some months later it was included in the lease of the adjacent property for service station purposes.

■ As we view the law of Illinois, which governs this case, the trial court's conclusions of law correctly stated the proper measure of indemnity applicable under the terms of the policies. In Smith, for Use of Inter-Ocean Casualty Co. v. Allemannia Fire Insurance Co.,

219 Ill.App. 506 it was held that "actual cash value" as used in the indemnity clause of a fire insurance policy "means reproduction value less depreciation for age".

The insurers however rely heavily upon McAnarney v. Newark Fire Ins. Co., 247 N.Y. 176, 159 N.E. 902, 56 A.L.R. 1149. That case involved factory buildings adapted to the manufacture of malt which could no longer be used for that purpose because of the National Prohibition Act. In this unique situation it was held error for the court to instruct the jury that they must consider no other subject than cost of reproduction less depreciation and that the obsolescence of the structures or their inutility for commercial or manufacturing purposes might not be considered. The court did recognize however that depreciation includes obsolescence (247 N. Y. at page 185, 159 N.E. at page 905). It is our belief that the vice of the instruction was its affirmative rejection of any consideration of obsolescence or inutility. In any event, unlike McAnarney, in the instant case there was no unusual obsolescence factor not embraced within the normal concept of "depreciation". There was no evidence that the insured structure was no longer useful for the purposes for which it was designed. To the contrary the building was in fact in actual use for restaurant-tavern purposes. Likewise the trial court was correct in its conclusion of law bearing on the intent or decision of the plaintiff to remove or tear down the insured structure. This was a collateral matter having no bearing on the actual cash value of the structure cf. Dubin Paper Co. v. Insurance Company of North America, 361 Pa. 68, 62 A.2d 85, 8 A.L.R.2d 1393; Milwaukee Mechanic's Insurance Co. v. Maples, 37 Ala.App. 74, 66 So.2d 159; Edlin v. Security Insurance Co., 7 Cir., 269 F.2d 159. The rationale of First National Bank of Highland Park v. Boston Insurance Co., 17 Ill.App.2d 159, 149

N.E.2d 420 is in accord, although the Supreme Court of Illinois affirmed on different grounds (First National Bank of Highland Park v. Boston Insurance Co., Ill., 160 N.E.2d 802).

Although the testimony as to extent of damages and the value of the structure and its contents was conflicting there was substantial evidence which supports the findings of fact and the judgment of the trial court. The trial court's computation of the value of the building is supported by the testimony of witness Zerante, the architect, who estimated the replacement cost from $11.50 to $12.50 per square foot and gave 2400 square feet as the area of the structure. He further testified that the building properly maintained had a life expectancy of fifty years and on a straight line depreciation basis would depreciate at the rate of two per cent per year. Witness Albers testified that the building, maintained as it was, should not be depreciated more than fifty per cent of its actual replacement cost. Defendant's witness Englund, a contractor, testified that a building of the type of the insured structure would have a life expectancy of seventy-five to one hundred years with good maintenance.

We further hold that plaintiff as operator of the restaurant-tavern from 1938 to 1948 and lessor of the premises and equipment from that date to the time of the fire was competent to testify as to the value of the items of fixtures and equipment. Brenton v. Sloan's United Storage, 315 Ill.App. 278, 42 N.E.2d 945; Ruud v. Bostrom, 227 Ill.App. 186; Mayer v. Miller, 213 Ill.App. 279; Wiegert v. Davis Cleaning & Dyeing Co., 254 Ill. App. 63. His testimony and that of fixture dealer, Kohn, substantiates the court's finding of the value of the furniture and equipment.

The judgment of the District Court is therefore affirmed.

Affirmed.