**AETNA STATE BANK, Plaintiff,**

v.

**MARYLAND CASUALTY COMPANY**
**et al., Defendants.**

**No. 71 C 1596.**

United States District Court,
N. D. Illinois, E. D.

June 2, 1972.

Charles J. O'Laughlin, Patrick J. Phillips, Jenner & Block, Chicago, Ill., for plaintiff.

John P. Gorman, Fredric H. Stafford, Clausen, Hirsh, Miller & Gorman, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

### CROSS-MOTIONS FOR SUMMARY JUDGMENT

MAROVITZ, District Judge.

This is an action by a mortgagee (AETNA) against six insurance companies who each issued an insurance policy in the face amount of $50,000.00 on certain buildings and property owned by the mortgagor-insured (GARCY) covering the period April 1, 1970 to April 1, 1971. AETNA was named as mortgagee on the first page of each policy as well as in the "Standard Mortgage Clause" contained in each policy. The policies covered direct loss by fire, among other things.

On July 6, 1970 a fire occurred at the insured location. Had the foregoing been the sum total of the relevant facts there would be no question that AETNA, as mortgagee under a "Standard Mortgage Clause" would be entitled to the proceeds of the policies. But there are several factors in this case that inject a complexity not present in the usual mortgagee case.

According to the stipulated facts GARCY, the mortgagor, entered into a written contract under which the entire complex of buildings at the insured location were to be demolished with all salvage from the wrecking belonging to the wrecking company. The fire occurred after the wreckers had already entered the premises and had started their work. In addition, the Rollins Burdick Hunter Company, the duly authorized agent of the six defendant insurance companies as well as the insurance broker for the mortgagor were notified by the mortgagor that the wreckers would be entering the premises and that the policies may be cancelled. AETNA, however, did not notify the insurance companies that the wrecking was to take place and AETNA did not receive notice from the insurance companies that the policies were to be cancelled.

There are basically four issues which must be determined, three regarding liability as such and the fourth regarding the amount of liability assuming that the defendants are liable on the policies. These issues are before us on cross-motions for summary judgment.

The defendants raise the defenses that 1) the policies were cancelled at the request of the insured; 2) the plaintiff failed to notify defendants of the wrecking contract and partial wrecking thereunder prior to the fire thereby rendering the policies null and void; 3) that assuming, *arguendo* liability, there was no value recoverable by either the insured or the plaintiff since the insured buildings were abandoned to the wrecker.

## I.

In regard to the first point it does seem that the mortgagor, GARCY, did request the cancellation of the policies but this request in itself is not dispositive of the issue. Defendants recite the standard provision in the policies regarding cancellation at lines 56 through 60 of the form policy:

"CANCELLATION OF POLICY.

This policy shall be cancelled at any time at the request of the insured, in which case this Company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time."

Given the presence of a mortgagee in this case the cancellation provision as it appears in the form policy cannot be read in isolation but must be interpreted in light of the accompanying provisions in the "Standard Mortgage Clause". The "Standard Mortgage Clause" provides in part that:

Loss or damage, if any, under this policy shall be payable to the mortgagee [or trustee], named on the first page of this policy, as interest may appear, and this insurance as to the interest of the mortgagee [or trustee] only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee [or trustee] shall, on demand, pay the same.

It is abundantly clear from the cases and treatises that under a "Standard Mortgage Clause" insurance policy a mortgagor cannot request the cancelling of the policy without the consent of the mortgagee. The requirement of the mortgagee's acquiescence in cancellation is an entirely logical one given the vested interest he has in the protection of the property and the loss he stands to bear should the property be destroyed.

Given the independent nature of the insurance company's relationship to the mortgagee the phrase in the mortgage clause which states that "this insurance as to the interest of the mortgagee [or trustee] only therein, shall not be invalidated by any act or neglect of the mortgagor . . ." has therefore been interpreted to bar the "act" of cancellation by the mortgagor without consent of the mortgagee. See B X Corporation v. Aetna Ins. Co., 187 Misc. 806, 63 N.Y.S.2d 14; Employers' Fire Insurance Co. v. Pennsylvania Millers Mutual Insurance Company, et al., 116 Ga.App. 433, 157 S.E.2d 807; Lauman, et al. v. Springfield Fire & Marine Ins. Co., 184 Cal. 650, 195 P. 50. See also 5 Appleman: Insurance Law & Practice § 3401; 11 Couch on Insurance 2d §§ 42:685, 42:694, 42:714. The fact that the form policy states that "this policy shall be cancelled at any time at the request of the insured . . ." cannot be read independent of the "Standard Mortgage Clause" and the unique relationship that the clause creates.

Of course the insurance company has a right to cancel the policy at any time as provided in the policy and the "Standard Mortgage Clause" but that cancellation requires notice to the mortgagee and remains in effect for ten days as stated both in the form policy and in the mortgage clause:

This Company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee [or trustee] for ten days after notice to the mortgagee [or trustee] of such cancellation and shall then cease, and this Company shall have the right, on like notice, to cancel this agreement.

It is undisputed that no such notice was here given to the mortgagee. Thus the question of whether the policy was in effect at the time of the fire in view of the mortgagor's request for cancellation must be resolved in plaintiff's favor since such a request is not effective as to the mortgagee and no general cancellation notice on the companys' part was sent.

## II.

The defendants' next defense is that the insurance policies were null and void irrespective of the mortgagor's request for cancellation because the plaintiff failed to notify defendants of the wrecking contract and the increased hazard that such an operation would create.

There is no question that an insurer can require that it be informed of an increase in hazard; that the premium can be adjusted to reflect that greater hazard and that failure to notify or pay the higher premium can result in the nullification of the policy since the policy so states:

Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring

(a) while the hazard is increased by any means within the control or knowledge of the insured;

When a "Standard Mortgage Clause" is attached, however, the mortgagee cannot be held responsible for the mortgagor's failure to inform the insurer of the increased hazard—provided the mortgagee had no knowledge of greater hazard. The clause states:

. . . this insurance as to the interest of the mortgagee [or trustee] only therein, shall not be invalidated . . by the occupation of the premises for purposes more hazardous than are permitted by this policy . . .

Provided also, that the mortgagee [or trustee] shall notify this Company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee [or trustee] and, unless permitted by this policy, it shall be noted thereon and the mortgagee [or trustee] shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void.

Defendants claim that plaintiff knew that the wreckers had entered the premises thereby increasing the hazard, yet failed to give the defendants the required notice and the policy was therefore null and void. We find defendants' contention in this respect untenable.

It is stipulated that the defendants *were* informed of the operations of the wreckers by the mortgagor and they therefore had actual knowledge of the increased hazard. It is also undisputed that plaintiff as mortgagee did *not* notify defendants of the increased hazard. Defendant therefore makes much of the point that the fact that it knew of the hazard is irrelevant since that knowledge came from the mortgagor and the mortgagee did not conform with in the strictest sense with its notification requirement thereby rendering the policy void.

This interpretation of the notification provision is tortuous and unreasonable. The primary purpose of notification is to allow the insurer to increase premiums to reflect the greater risk and the failure to communicate that greater hazard is justifiably punished with nullification which protects the insurer against higher risks for disproportionate premiums. But once that notification is received from the mortgagor the purpose is served and to require the mortgagee to go through the empty gesture of also notifying the insurer of the greater hazard at the risk of nullification for failure to do so would be ludicrous.

We therefore find that the mortgagor's notification of the greater risk was sufficient to prevent automatic nullification both as to the mortgagor *and* the mortgagee. What remains is the

latter part of that provision which requires the payment of a higher premium on demand which demand if not met justifies nullification of the policy. No demand for a higher premium was made on these policies and they were therefore not null and void and were in effect as to the mortgagee at the time of the fire.

To summarize then, we find that the mortgagor's request for cancellation was not effective as to the mortgagee; that the mortgagee was not notified of any cancellation as required by the "Clause"; that the failure of the mortgagee to inform the insurer of the greater risk is irrelevant since the insurer had already been informed by the mortgagor and that the policy was not null and void since no request for a higher premium had been made.

On the liability issue we therefore find for plaintiff.

## III.

The finding, in legal terms, of liability on the part of defendant insurance companies, though, does not ipso facto mean that there is a value that can be collected on the policies in practical terms. What must now be determined is whether the value of buildings at the time of the loss was the "actual cash value" as plaintiff would have it or whether there is no value that can be collected since the buildings were being wrecked pursuant to a firm contract to demolish the entire complex with the salvage belonging to the wreckers, as defendants assert.

The plaintiff claims that the "actual cash value" of the buildings at the time of the loss was $300,000.00; that the amount due on the mortgage held by it was $249,843.06; that each of the six companies issued a $50,000.00 policy on the buildings and that $41,640.51 is due plaintiff from each company ($41,640.51 x 6 = $249,843.06—mortgage balance).

The premise that "actual cash value" rather than market value or relative value will be determinative of the amount of loss is a valid one in the usual case, given the difficulty that arises in permitting incidental considerations to be injected into evaluation.

We do not believe that it ought to be applied in this case. To award $249,843.06 for a fire loss to buildings that were in the process of being wrecked with the knowledge of the plaintiff and pursuant to a firm contract which also gave the wrecker ownership of the salvage would produce an incongruous and inequitable result.

Plaintiff cites various cases to the proposition that actual cash value is the only criteria determinative of the amount of loss even where there was an expressed intention of wrecking the insured location.

Plaintiff relies heavily on Knuppel v. American Insurance Co., 269 F.2d 163 (7th Cir.1959) in support of its contention that actual cash value means reproduction value less depreciation and not market value. In *Knuppel* the Court held that the intent of plaintiff to tear down the structure had no bearing on the actual cash value. Firstly, there was conflicting testimony in *Knuppel* as to the intention to wreck the building, the plaintiff testifying that he was considering various possibilities and was undecided at the time of the loss. Secondly, we find a distinct difference between an expressed interest in wrecking the insured property and the actual implementation of that decision and the occurrence of the loss while that wrecking was actually taking place.

In First National Bank in Chicago Heights v. Home Ins. Co., also utilized by plaintiff, decided by this Court and affirmed by the 7th Circuit, 350 F.2d 577 (1965) the insured had expressed his intention to demolish the insured building but the case nowhere discusses the actual effect of an express intention to demolish on actual cash value.

Plaintiff also cites, along with cases that attest to the the general applicability of the actual cash value criteria of reproduction value less depreciation, First National Bank of Highland Park v. Bos-

ton Insurance Co., 17 Ill.App.2d 159, 149 N.E.2d 420 (1st Dist. 1958). In that case the insured had entered into a contract to sell the property for $19,000.00 of which he had received $3,000.00 at the time of the fire. The insurance on the property totaled $46,750.00 and there was evidence showing a replacement value of over $200,000.00 and judgment was entered in the latter amount.

Plaintiff in our case therefore analogizes that only replacement value less depreciation can be considered although another value has been pinpointed; in *First* the actual sale price, in our case a zero value given the demolition in progress. We believe that *First* is also distinguishable on the grounds that there is a vast difference between an executory sales contract which retains the insured property intact and a contract to demolish which is in the process of being executed.

Finally there are a number of cases which indicate that the exceptions to the "actual cash value" rule in demolition cases, increases in viability in proportion to the proximity and certainty of the demolition and decreases in acceptance in proportion to the remoteness and indefiniteness of demolition.

In Board of Education of Hancock County v. Hartford Fire Ins. Co., et al., 124 W.Va. 163, 19 S.E.2d 448 the school involved therein was to be replaced when a fire occurred. A contract was made to remove the old school and build a new one, the contractor was notified of the day when the school would be vacated and it was requested that the contractor proceed with the demolition. The Court approved of the general actual cash value rule but found the case to be an exception given the binding contract to demolish.

This reasoning applies, *a fortiori* in our case where the actual wrecking was in progress.

In Bailey v. Gulf Insurance Co., 406 F.2d 47 (10th Cir. 1969), the Court held that existence of a city resolution declaring the building to be a nuisance and ordering the building to be demolished had no bearing on its value for fire insurance purposes. There is however a difference between the effect on cash value of a mere "legal duty" to demolish and the actual demolition being embarked upon as well as a difference between being forced into demolition by a city resolution and the voluntarily embarkation upon demolition. The Court however did state that:

> Indeed, in an analogous situation in which an owner was also under a legal duty to demolish an insured structure, this court, applying Oklahoma law, determined that at least until physical changes were made in fulfillment of the legal obligation to destroy the building, the insurer could not use the owner's legal duty as a shield against the payment of damages. [See American Home Fire Assurance Co. of New York v. MidWest Enterprise Co., 189 F.2d 528 (10th Cir. 1951)] 406 F.2d at 48.

Thus we see that the closer intention comes to reality the more apt the Court is to consider the valuelessness of the insured building in view of the demolition and in our case the physical changes spoken of in *Bailey* were certainly being made.

It would indeed be ludicrous to apply a principle which includes a replacement value to a case where the insured was himself already in the process of paying a wrecker to do what the fire did for him for nothing. To allow almost a quarter of a million dollars to be paid for buildings that were valueless and whose duration of existence was governed solely by the rapidity of the swing of the wrecker's ball which was operating at the behest of the insured and with the acquiescence of the mortgagee would indeed produce a grossly inequitable result.

We are fully cognizant of the Pandora Box that can be opened by allowing the amount of loss to be determined by the relative value to the insured at the time of loss and we are completely aware that the injection of such considerations may

"open a field of speculation and conjecture that would cloud the issue of actual loss in a maze of collateral issues" (American Ins. Co. v. Treasurer School District No. 37, 273 F.2d 757 at 759 (10th Cir. 1959). It is this awareness that causes us to reiterate the continuing viability and *general* applicability of the "actual cash value" rule and to highlight the narrow grounds for our decision. We cannot however be compelled by hard and fast rules to produce an unjust result where an exception is wholly and undeniably warranted.

We therefore find that actual cash value is not the proper criteria for determining the amount of loss for property which is *in the process* of being demolished and whose demolition at the time of loss is no longer a matter of conjecture or speculation and we hold that although the insurance policies were in effect at the time of loss the mortgagee having met its obligations, there is nevertheless no compensable loss in view of the fact that there is no value to buildings *in the process* of demolition. Summary judgment for defendant in regard to the amount of loss is granted.