**CHICAGO TITLE & TRUST COMPANY, Trustee under Trust No. 49944, Plaintiff,**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant.**

**No. 72 C 3225.**

United States District Court, N. D. Illinois, E. D.

June 7, 1973.

. Marvin Glassman, Rabens, Formusa & Glassman, Chicago, Ill., for plaintiff.

Edward A. McCarthy, Epton, McCarthy & Druth, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

WILL, District Judge.

This is an action on an insurance contract which provided coverage for property damage caused by fire. The parties are of diverse State and the amount in controversy exceeds $10,000. An answer having been filed, plaintiff has filed two motions— 1) a motion in limine seeking an order precluding the defendant from introducing any evidence of the purchase price or market value of the building covered by the defendant's policy of fire insurance and damaged by fire on May 1, 1972, and 2) a motion to strike both the defendant's affirmative defense number 3 in which it is alleged that the building was abandoned and left vacant and unoccupied for a period in excess of sixty days, in violation of the provisions of the policy thereby rendering it void, and defendant's affirmative defense number 4, in which it is alleged that the plaintiff and its beneficiary increased the hazard to the insured property through its management thereof, having permitted it to exist in such condition of disrepair and uninhabitability as to constitute an increase of hazard, in violation of the provisions of the policy of insurance, and that the plaintiff caused and permitted the building to fall into such a state of disrepair as to violate the various Building Codes of the City of Chicago, constituting an increase of hazard, in violation of the provisions of the policy of insurance. For the reasons stated below, these two motions will be denied.

On May 1, 1972, and for a period prior to that date, the plaintiff, as trustee, held title to a building located at 1312–1316 West 79th Street, Chicago, Illinois. A policy of insurance including coverage for damage and loss by fire was issued on the subject building by the defendant under the direction of the Illinois Property Insurance Placement Facility, commonly known as the Illinois FAIR Plan. This program was created pursuant to Federal and State statutes

to provide insurance in "high risk" areas, and the defendant issued the instant policy as a subordinate insurer at the direction of the FAIR Plan.

On February 6, 1972, the subject building sustained damage as a result of fire, and the defendant under the instant policy paid out approximately $18,000 to the insured at that time. Subsequently, on April 7, 1972, Oddie Banks apparently purchased the beneficial interest in the property and became the beneficiary of Chicago Title & Trust Company Trust No. 49944. The next day she made out an Application for Property Insurance Placement to the Illinois FAIR plan, on the form normally utilized for an initial application for insurance. The statute pursuant to which the insurance had originally been issued speaks only to initial applications and makes no mention of notice of change of beneficiary on previously insured property. Whether or not an assignment of a FAIR plan policy is proper or possible is obviously an issue in this case.

The fire which gave rise to the instant claim and suit took place 23 days later, on May 1, 1972. Sometime thereafter, the building was demolished.

On May 8, 1972, FAIR ordered an inspection of the property ostensibly pursuant to the April 8, 1972 application for insurance. This inspection actually took place on August 16, 1972.

It is noteworthy that at the time of the fire on May 1, 1972, there was pending in the Circuit Court of Cook County a complaint brought by the City of Chicago against the plaintiff demanding that numerous Building Code violations in the building be corrected. On April 6, 1972, the day before Oddie Banks became the beneficiary under the trust, Judge David Cerda had ordered that the building be vacated and that no heat repairs be made on it. On April 17, 1972, two weeks before the fire, Judge Irwin Cohen ordered that the building be boarded and secured.

In its complaint, plaintiff seeks damages of $43,795 which it alleges is the actual cash value of the subject building as insured by the defendant, which damages it alleges were caused by the fire of May 1, 1972.

I

The plaintiff's motion to preclude the defendant from introducing any evidence of the purchase price of the fair market value of the subject building obviously anticipates the position which the plaintiff assumes defendant will take with respect to damages if the issue of liability under the policy is resolved against it. Assuming separate trials of the issues of liability and damages such a motion may be ultimately unnecessary. However, given the fact that a trial on the issue of damages, if the issue of liability is resolved favorably to the plaintiff, will follow immediately after resolution of the question of liability and the fact that a ruling on the motion may facilitate a disposition of the case without a trial, we will proceed to a ruling at this time.

The issue presented by this motion is whether, under Illinois law, the facts of this case permit any evidence other than reproduction cost minus depreciation to be presented to the fact finder to determine "actual cash value" which is the amount owing plaintiff under the policy. The principal statement of Illinois law, which, as a federal court sitting in a diversity action, we are bound to apply, was made in Smith v. Allemannia Fire Ins. Co., 219 Ill.App. 506 (3d Dist. 1920). The Illinois Appellate Court there held that actual cash value of a building as defined in a fire insurance contract means the cost of reproducing that building minus its depreciation. Market value was found irrelevant to the determination of actual cash value. Despite the fact that there has been no Illinois Supreme Court decision on this point and despite the fact that there may be some factual misapprehensions in the opinion, *Smith* has been consistently followed on numerous occasions as the law in Illinois. *See, e. g., Esquire Restaurant, Inc. v. Common-*

wealth Ins. Co. of New York, 393 F.2d 111 (7th Cir. 1968); Wisconsin Screw Co. v. Fireman's Fund Ins. Co., 297 F.2d 697 (7th Cir. 1962); Knuppel v. American Ins. Co., 269 F.2d 163 (7th Cir. 1959).

One exception to the general rule of *Smith* was recently articulated by Judge Marovitz of this Court. In Aetna State Bank v. Maryland Casualty Co., 345 F. Supp. 903, 909 (N.D.Ill.1972), he held that "actual cash value" is not the proper criterion for determining the amount of loss for property which is *in the process* of being demolished and whose demolition at the time of the loss is no longer a matter of conjecture or speculation. He further held that, although the insurance policies were in effect at the time of the loss, the mortgagee having met its obligations, there was nevertheless no compensable loss in view of the fact that there is no value to buildings *in the process* of demolition. Summary judgment was granted for the defendant in that case.

The facts in *Aetna State Bank* are somewhat different from those in the instant case in that the subject building there was actually in the process of being demolished whereas here the subject building was not being demolished but was standing vacant and unoccupied, secured and boarded up, under court orders requiring that it be vacated and boarded up and that its heating system not be repaired. We find this difference to be without distinction for the underlying theory behind the *Aetna* holding is that it is inequitable to award substantial monetary damages to a person to compensate him for what is of no current or present monetary value.

■■ In the instant case, when the subject building was destroyed on May 1, 1972, it was an economically useless building. It was empty, secured and boarded. It had been gutted by a previous fire. It was not being used in any way.

Here, as in the *Aetna State Bank*, it would be ludicrous to allow the plaintiff to recover a substantial amount of money representing the replacement cost less depreciation of a building that was for all practical purposes non-existent. It would be grossly inequitable for plaintiff's beneficiary to recover $43,000 for a building which less than one month prior to its destruction she had purchased for $4,000 in what appears to have been an arm's length transaction and in which building she had made absolutely no additional investment or improvements.

We hold that the *Smith* doctrine of rigidly defining actual cash value of a building as its reproduction costs minus depreciation is limited in application to those buildings which are being economically utilized at the time of their damage or destruction. Such a limitation may be implied from the facts of those cases which have purported to follow *Smith*. Despite the language in the various opinions, Illinois has not allowed such windfalls as plaintiff here seeks.

Illustrative of this is the recent case of Lieberman v. Hartford Ins. Co., 6 Ill. App.3d 948, 287 N.E.2d 38 (1st Dist. 1972), in which the Appellate Court of Illinois went a step further than Judge Marovitz in *Aetna State Bank* and held that, where a *contract for demolition* exists on the subject building, the plaintiff has *no* "insurable interest" in the building since there is no economic value to the building. Judgment was entered for the defendant in that case despite clear liability under the policy.

In the instant case, the building was economically useless at the time of the fire. While we would prefer a more flexible standard of insurable "actual cash value" than the Illinois courts have adopted so that, in cases like the instant one, an insurable interest having some relationship to the actual value, even though nominal, could be found, we conclude that under all the precedents, there was no insurable interest in the building at the time of the fire on May 1, 1972.

In cases such as the instant one, where the building is vacant, boarded up and under a court order prohibiting re-

pair of its heating system, and, therefore, cannot be economically utilized, reproduction cost new less depreciation has little or no relationship to actual value. Other factors, such as market value or salvage value, should be considered in establishing any insurable interest of the building owner. In their present posture, however, the Illinois cases preclude consideration of such factors. They do, however, permit a finding that where, as here, a building is economically useless and was obviously purchased for its scrap or salvage value, there is no insurable interest. This is such a case.

## II

The fire insurance policy pursuant to which the plaintiff seeks recovery contains a standard vacancy provision which provides:

*Conditions suspending or restricting insurance.* Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring:

. . . . . . .

(b) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days.

Plaintiff has moved to strike the defendant's affirmative defense which alleges that the subject building was vacant for 60 days in addition to moving to strike a similar affirmative defense which alleges that the plaintiff, in violation of Municipal Building Codes, allowed the subject building to fall into such a state of disrepair as to constitute an increase in hazard in violation of the terms of the policy. Each of these defenses would exculpate defendant from liability under the policy.

Plaintiff's argument in support of its motion to strike is that the defendant is "precluded" from asserting these defenses since it had ample opportunity to determine whether to continue the risk or cancel the policy after Oddie Banks made an application for insurance to the FAIR program on April 8, 1972,

three weeks before the fire. Plaintiff contends that, pursuant to the statute providing for application for insurance under the FAIR plan, an applicant such as Banks is entitled to an inspection of the named property and that failure of the insurer to inspect acts as a type of estoppel upon the insurer preventing it from asserting any defenses which it could have discovered upon inspection.

Plaintiff's reliance upon this statute is misplaced. The portion relied upon, Ill.Rev.Stat. ch. 73 § 1065.71(1), provides:

Any person having an insurable interest in real or tangible personal property at a fixed location in an urban area who, after diligent effort has been unable to obtain basic property insurance is entitled upon application to the Facility [Illinois Industry Placement Facility, i. e., the FAIR plan] to an inspection of the property by representatives of the Inspection Bureau.

After such an inspection, a policy will issue if the property is found acceptable. By its own terms, the procedure envisages an initial application for insurance only by an applicant who has been unable to obtain insurance elsewhere.

In the instant case, the plaintiff was insured by the defendant pursuant to a previous application made to FAIR. The only relevant information on the application of April 8, 1972, was that Banks had replaced Klaus Johnke as beneficiary under the insured plaintiff trust. As alluded to above, the statute does not provide for notice of change of beneficiary under an insured trust. Whether or not such a change in beneficiary invalidates the insurance contract or requires a new application is not clear. Given the unique character of the FAIR plan, it is at least arguable that a change in beneficial ownership cancels the policy and the new owner is required to seek regular insurance before applying to FAIR. Certainly the prior history of claims of the new owner is a factor which is relevant even under FAIR. Whether or not any policy of insurance

was in effect on the date of the fire, May 1, is obviously, therefore, one of the issues in the case.

In any event, we cannot hold that the defendant or FAIR, which is not a party to this law suit, was under a statutory duty, to inspect the subject building within three weeks upon application for insurance upon a building which may have been already insured, particularly when the application appeared to be for new insurance but did not indicate that the condition precedent of diligent effort to obtain regular insurance without success had been met. Given the confused and uncertain status of the old policy and the new application, we cannot prohibit the defendant from asserting what may be a valid defense.

Plaintiff further argues that defendant is precluded from asserting the vacancy defense by virtue of Kolivera v. Hartford Ins. Co., 8 Ill.App.3d 356, 290 N.E.2d 356 (1st Dist. 1972). This reliance, however, is misplaced. In that case, the plaintiff had nine policies of fire insurance. The subject building had been left vacant for a period in excess of 60 days in violation of the standard vacancy provision which existed in each policy. The Circuit Court granted judgment for all the defendants on the basis of the vacancy clause. The Appellate Court affirmed this decision with respect to the six companies which had issued a policy before the 60 day period had begun, but with respect to those three companies which had issued policies within the 60 day period, it reversed and remanded to the Circuit Court. In support of this reversal, the Court stated that the companies which had issued the policies within the 60 day period had an opportunity to inspect the premises prior to issuing the policies and held that, since they failed to exercise this opportunity to inspect, the pre-existing vacancy would be disregarded unless the policy specifically provided otherwise.

Clearly the instant case could not fall within the scope of Kolivera or its rationale unless we were ultimately to find

that the application made by Banks on April 8, 1972 was a new application for insurance. Since that question and its implications are at present unresolved, plaintiff's motion to strike these defenses must be denied.

An appropriate order will enter denying plaintiff's motion in limine to preclude the defendant from introducing any evidence as to the purchase price or market value of the subject building and denying plaintiff's motion to strike certain defenses.