GARCY CORPORATION, Plaintiff-Appellant,

v.

HOME INSURANCE COMPANY et al.,
Defendants-Appellees.

No. 73–1298.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 12, 1974.

Decided May 7, 1974.

Eli E. Fink, Morris J. Coff, Chicago, Ill., for plaintiff-appellant.

John P. Gorman, James T. Ferrini, Chicago, Ill., for appellee.

Before CASTLE, Senior Circuit Judge, and PELL and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

This appeal presents the troublesome question of the worth of a building that burned down shortly before it was to have been demolished.

Plaintiff owned five buildings in the same block: a seven-story building, a four-story building, a two-story building, a one-story building and a quonset hut. In April, 1970, each of the six defendant insurance companies issued identical policies totaling $300,000 against fire damage to any or all of the five buildings.

In May or June of 1970, plaintiff entered into a contract with a wrecking company for the demolition of all the buildings. All salvage would become property of the demolition company. The wreckers began work during the last week of June; it was estimated the demolition would take 90 days. On July 6, 1970, the company had demolished the quonset hut, the one-story building, part of the two-story building and a small part of the four-story building.

No wrecking or stripping of salvageable material had begun on the seven-story building. It contained $26,000 of inventory and various machinery and equipment.[1] An affidavit of the assistant to the president of plaintiff corporation stated that plaintiff was trying to sell the seven-story building, even while the smaller buildings were being wrecked. The building was listed with real estate brokers. If plaintiff had found a buyer, it would have halted the demolition.

On the evening of July 6, 1970, all the remaining buildings were destroyed by fire. An appraisal submitted by plaintiff placed the actual cash value of the seven-story building before the fire at $633,532. Defendants refused to pay plaintiff's claim for the total amount of coverage, $300,000.

The case was submitted to the district court on motions for summary judgment from both sides. Although the complaint alleges a claim based on loss of all the buildings, plaintiff's motion for summary judgment relies on loss of the seven-story building alone. Defendants' motion seeks judgment on the damages issue on the theory that the seven-story building had no value to plaintiff at the time of the fire because of the contract for demolition.

The district judge's opinion (reported at 353 F.Supp. 329), granting defendants' motion for summary judgment on the damage issue, follows Judge Marovitz' opinion in a related case, Aetna State Bank v. Maryland Casualty Co., 345 F.Supp. 903 (N.D.Ill.1972). Aetna State Bank, as plaintiff's mortgagee on the buildings, sued the same defendants on the same policies. Judge Marovitz found defendants were liable on the policies, but granted summary judgment to defendants on the damages issue.

The case went to Judge Marovitz on stipulations of fact that apparently treated the five buildings as an indivisible unit.[2] His opinion shows no awareness that the demolition crew had not begun on the largest and most valuable building, nor that plaintiff had not yet removed inventory and equipment from the building, nor that plaintiff was trying to sell the building. On the facts presented to him, Judge Marovitz held:

> We therefore find that actual cash value is not the proper criterion for determining the amount of loss for property which is *in the process* of being demolished and whose demolition at the time of loss is no longer a matter of conjecture or speculation . . . there is nevertheless no compensable loss in view of the fact that there is no value to buildings *in the process* of demolition.

345 F.Supp. 903, 909 (emphasis in original).

Defendants did not plead collateral estoppel of the *Aetna* case against plaintiff. Such a pleading would have been inappropriate for two . reasons. First, there is no privity between mortgagor and mortgagee; defendants cannot raise collateral estoppel against a party which did not participate in the previous case. 1B Moore's Federal Practice ¶ 0.-411 [12], at 1673 (2d ed., 1974). Second, the difference between the factual contexts eliminates identity of issue on the damages question.

1. Plaintiff had cancelled its insurance policies on these contents.

2. Aetna's motivation to treat the buildings as a unit may have been the fact that the amount due on the mortgage on all five buildings was $249,843, which was less than the total coverage of $300,000. Here plaintiff claims the value of the seven-story building alone exceeded $300,000.

But defendants do rely heavily on *Aetna* as precedent for the present case. We agree with the analysis in *Aetna* that equity will not allow recovery of actual cash value (defined as replacement cost minus depreciation for age) of a building irrevocably abandoned to a wrecking crew. If the case had been presented to us as it was to Judge Marovitz, with no separate information on individual buildings, we probably would have reached the same result.

When the *Aetna* reasoning is applied to the facts as presented here, however, we reach the opposite conclusion. The seven-story building was in use as a warehouse for inventory and equipment. Plaintiff hoped to sell it in the weeks before the wrecking crew would reach it. It had not been stripped of salvageable material or prepared for demolition. Plaintiff could have halted demolition, although it might have been liable in money damages to the wrecker. In short, the seven-story building was not *in the process* of demolition.

A review of similar cases produces an amazing array of analyses, but the critical factual question almost always is whether the insured had abandoned the building pursuant to an irrevocable commitment to demolish it. The following are examples of less than irrevocable commitment. In Knuppel v. American Ins. Co., 269 F.2d 163 (7th Cir. 1959), the court excluded evidence of the owner's intention to demolish a building still in use by his lessee as a tavern and restaurant. A vacant fraternity house, declared a nuisance by the city and ordered demolished, was valued without consideration of the city's resolution in Bailey v. Gulf Ins. Co., 406 F.2d 47 (10th Cir. 1969). Exclusion of evidence of a school board's intent to demolish a school was ruled proper in American Ins. Co. v. Treasurer, School District No. 37, 273 F.2d 757 (10th Cir. 1959), because the school was in full use at the time of the tornado. In American Home Fire Assur. Co. v. Mid-West Enterprise Co., 189 F.2d 528 (10th Cir. 1951), a contract by the owner to tear down part of the building for the benefit of the lessee had no effect on the insurable interest, because no physical changes had been made pursuant to the contract.

Evidence of a lessee's plans to demolish buildings he had erected was irrelevant to his insurable interest in Federowicz v. Potomac Ins. Co., 7 App.Div.2d 330, 183 N.Y.S.2d 115 (1959). A landlord-tenant contract for demolition and replacement of a building was not final in Leggio v. Millers National Ins. Co., 398 S.W.2d 607 (Tex.Civ.App.1965), so the landlord still had an insurable interest.[3] A contract for demolition, performance of which had not begun, did not affect the insured's interest in Godwin v. Iowa State Ins. Co., 27 S.W.2d 464 (Mo.Ct.App.1930).[4]

Examples of abandonment pursuant to an irrevocable commitment to demolish are Royal Ins. Co. v. Sisters of the Presentation, 430 F.2d 759 (9th Cir. 1970); Lieberman v. Hartford Fire Ins. Co., 6 Ill.App.3d 948, 287 N.E.2d 38 (1972); and Board of Education v. Hartford Fire Ins. Co., 124 W.Va. 163, 19 S.E.2d 448 (1942). *Royal Ins. Co.* was decided under California law, which, contrary to Illinois law, defines insurable interest as pecuniary interest. But the same result could be reached following the *Aetna* analysis because the nuns' obligation to allow demolition of the abandoned convent was specifically enforceable. *Lieberman* is also an instance of a contract for demolition which could have been specifically enforced by the contractor for the new building. In addition, the

---

3. The court stated in dictum that an executed contract would have eliminated the landlord's interest, presumably because the tenant would have been entitled to specific performance.

4. Occasional cases find insurable interest or apply actual cash value even when demoli-

tion had already begun at the time of the fire. Eagle Square Mfg. Co. v. Vermont Mutual Fire Ins. Co., 125 Vt. 221, 212 A.2d 636, 213 A.2d 201 (1965); Irwin v. Westchester Fire Ins. Co., 58 Misc. 441, 109 N.Y.S. 612 (1908).

demolition work had actually begun. Board of Education v. Hartford Fire Ins. Co. turned on the factual determination that plaintiff had permanently stopped using the old school building.[5]

In analogous cases involving not demolition but some other change in circumstances before the damage occurred, courts have considered crucial the finality of the change. Since condemnation proceedings in Illinois may be abandoned by the condemnor, the owner of a condemned building may recover actual cash value even if he has already received a condemnation award. Edlin v. Security Ins. Co., 269 F.2d 159 (7th Cir. 1959), cert. denied, 361 U.S. 932, 80 S. Ct. 370, 4 L.Ed.2d 354 (1960); American National Bank & Trust Co. v. Reserve Ins. Co., 38 Ill.App.2d 315, 187 N. E.2d 343 (1962). A contract to sell does not affect the seller's insurable interest despite full or partial payment of the contract price. First National Bank v. Boston Ins. Co., 17 Ill.App.2d 159, 149 N.E.2d 420 (1958), aff'd, 17 Ill.2d 147, 160 N.E.2d 802 (1959); Dubin Paper Co. v. Insurance Co. of North America, 361 Pa. 68, 63 A.2d 85 (1949).

In Chicago Title & Trust Co. v. United States Fidelity & Guaranty Co., 376 F.Supp. 767 (N.D.Ill., 1973), the city had ordered the owner to board up an empty building and not to repair the heating system. It had been gutted by a previous fire. Judge Will, applying the *Aetna* doctrine, held that the definition of actual cash value as reproduction cost minus depreciation "is limited in appli-

cation to those buildings which are being economically utilized at the time of their damage or destruction." Since plaintiff was using the intact seven-story building as a warehouse and was trying to sell it, it had economic utility.

█ The district court erred in granting defendants' motion for summary judgment on the damages issue. Since the facts material to this issue are undisputed, the court should have granted plaintiff's motion for summary judgment on the damages question.

Both plaintiff and defendants also moved for summary judgment on the issue of cancellation of the policies:[6] Plaintiff sent a letter dated June 25 with the following address and salutation:

Mr. E. K. Eichengreen
Rollins Burdick Hunter Co.
231 South La Salle Street
Chicago, Illinois 60604

Dear Ed:

Eichengreen was plaintiff's agent; Rollins Burdick Hunter was defendants' agent. Eichengreen occupied one of a group of offices leased by Rollins Burdick Hunter. The district judge found that the only evidence relied on by defendants to show notice of cancellation to their agent was the June 25 letter. We agree with the district court's analysis of the form and content of the letter and with his finding that it did not effect cancellation of the policies (see 353 F.Supp. 329, 331–332).[7] The judge denied defendants' motion for summary

---

5. Defendants rely on Greyhound Building Corp. v. Fidelity-Phenix Fire Ins. Co., 7 Fire & Casualty Cas. 597 (N.D.Ill.1951), for dictum that, if there had been a binding contract for demolition, plaintiff would be deemed to have abandoned the building. The only authority cited in *Greyhound* is Board of Education v. Hartford Fire Ins. Co., which certainly does not equate a contract for demolition with abandonment. The two facts were separately determined. We decline to give any weight to the dictum expressed in *Greyhound*.

6. Again, defendants do not plead collateral estoppel of the statement in the *Aetna* opin-

ion that "it does seem that the mortgagor, *Garcy*, did request the cancellation of the policies. . . ." 345 F.Supp. 903, 905. The same factors of lack of privity and submission on stipulated facts apply as on the question of damages. In addition, a finding of cancellation by the mortgagor was not necessary to Judge Marovitz' conclusion that such a cancellation would not be effective as to the mortgagee's coverage.

7. We give no weight to the district judge's third reason, an admission in the pleadings that the policies were in effect at the time of the fire.

judgment on this ground but failed to rule on plaintiff's motion. Implicit in his discussion of the cancellation issue, however, is a ruling of summary judgment for plaintiff. He should have granted plaintiff's motion on the cancellation issue.

The third issue on which both parties sought summary judgment is whether the increased hazard of the demolition work voided the coverage. The district judge adopted the *Aetna* holding (see 345 F.Supp. 903, 905–906) in denying defendants' motion and again impliedly ruled in plaintiff's favor.

In *Aetna*, Judge Marovitz found that Garcy Corp., the mortgagor, had given defendants notice of its plans for demolition. The finding was necessary to the court's holding that the mortgagee had not violated its duty under the notice provision in the mortgage clause quoted below. Plaintiff asserts collateral estoppel against defendants' present attack on the factual finding of notice of demolition. We believe plaintiff is entitled to invoke collateral estoppel despite the lack of mutuality of privity. Federal Savings & Loan Ins. Corp. v. Hogan, 476 F.2d 1182 (7th Cir. 1973); Factor v. Pennington Press, Inc., 230 F. Supp. 906 (N.D.Ill.1963). While plaintiff was not a party to *Aetna*, defendants were; they had a full opportunity to litigate the issue of their knowledge of the proposed demolition. Defendants are now bound by the finding that they had knowledge.

The question becomes the effect of defendants' knowledge of the increased hazard under two provisions of the insurance policies. The first states:

Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the insured. . . .

The second provision is part of the standard mortgage clause:

Provided also, that the mortgagee shall notify this Company of any . . . increase of hazard which shall come to the knowledge of said mortgagee . . . and the mortgagee shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void.

*Aetna* holds that notification by the mortgagor satisfied the mortgagee's obligation under the latter provision. Since the defendants knew of the increased hazard and failed to demand payment of higher premiums, the policy was not voided as to the mortgagee.

We can find no cases construing the two provisions together where the insurer has knowledge of the increased hazard. Is the notice provision a "writing added hereto" under the first provision? A persuasive argument could be made that the insurer gives up its rights under the first provision when it substitutes as a remedy for increased hazard the notification by a mortgagee and the right to demand higher premiums.

Even if the remedy in the notice provision affects only the contract with the mortgagee and leaves the first provision intact as to the mortgagor, the insurer's knowledge of the increased hazard has another effect: waiver. Illinois cases do not allow an insurance company which learns of an increased hazard or other breach of contract to remain silent and retain unearned premiums, and then to assert the breach to escape liability following a loss. Orient Ins. Co. v. McKnight, 197 Ill. 190, 64 N.E. 339 (1902); Mechanics' Ins. Co. v. Hodge, 149 Ill. 298, 37 N.E. 51 (1894); Reinhardt v. Security Ins. Co., 312 Ill.App. 1, 38 N.E.2d 310 (1940); Norwich Union Indemnity Co. v. Haas, 179 F.2d 827 (7th Cir. 1950); see also, Militzer v. State Farm Fire & Casualty Co., 412 S. W.2d 540 (Mo.Ct.App.1967); Briney v. Tri-State Mutual Grain Dealers Fire Ins. Co., 254 Iowa 673, 117 N.W.2d 889 (1962); Wyatt v. State Farm Fire & Casualty Co., 78 Wyo. 228, 322 P.2d 137 (1958).

The district judge should have granted plaintiff's motion for summary judgment on the issue of increased hazard.

.Defendants are liable to plaintiff for the actual cash value of the seven-story building. An affidavit by the assistant to the president of Garcy Corp. states that a prospective buyer had asked for an appraisal of the building. The appraiser inspected the building on September 6, 1969. After the fire the following July, the appraiser submitted to plaintiff an appraisal valuing the building at $633,532.

Defendants did not object to the form or content of the affidavit and failed to file any affidavits contesting the amount of the appraisal. Thus the record contains no factual controversy on the actual cash value of the building. DeBardeleben v. Cummings, 453 F.2d 320 (5th Cir. 1972). Since the value exceeds the total coverage, plaintiff is entitled to recover the full $300,000 on the policies. The case is remanded for entry of summary judgment for plaintiff in the amount of $300,000.

Reversed and remanded.