American National Bank and Trust Company, of Chicago, not Individually but Solely as Trustee Under Trust No. 14971, Plaintiff-Appellee, v. Reserve Insurance Company, Defendant-Appellant.

Gen. No. 48,713.

First District, Second Division.

October 23, 1962.

Rehearing denied November 20, 1962.

Heineke, Conklin & Schrader, of Chicago (Paul H. Heineke, of counsel), for appellant.

Hoffman & Davis, of Chicago, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court:

On August 26, 1960 a fire totally destroyed the frame and brick building located at 4028–30 West Taylor Street in Chicago. Plaintiff, American National Bank and Trust Company of Chicago, brought this action as trustee and holder of legal title to the property in question, seeking recovery from defendant of $15,000, the maximum liability on its policy of fire insurance issued to plaintiff. As an affirmative defense to its liability on the policy, defendant alleged that plaintiff had breached a provision in the policy relieving defendant of liability if the insured premises were vacant or unoccupied for a period of sixty consecutive days prior to a fire.

Pursuant to rule 65 of the Practice Act (Ill Rev Stats 1961, c 110), the jury was instructed to render a general verdict accompanied by a special interrogatory on the question of occupancy. After return of a sealed verdict, the jury was apparently discharged, and thereafter it was discovered that the jury had not answered the special interrogatory. Instead, the jury rendered a general verdict for plaintiff of $6000, notwithstanding the agreement of the parties, placed in

evidence, that the loss was $15,000, the policy limit. The trial court denied defendant's post-trial motions, and granted plaintiff's motion for a directed verdict in the amount of $15,000, the amount of the loss under the policy limits, as agreed to by the parties. Defendant appeals.

The property was purchased in November 1959 from the Bonner family who had used it for operation of the Bonner Marshall Brick Company. Title was taken in trust by the American National Bank and Trust Company, with the four Zechman brothers and their sister as beneficiaries of the trust. The purchase was made with a view to use of the building as a warehouse for storage of the building supplies of the Garfield Lumber Company, a corporation owned by the Zechmans.

Bernard Zechman, a beneficiary of the land trust and proprietor of the Garfield Lumber Company, testified that although the building contained an office and some office furniture from the time of its ownership by the Bonners, this part of the building was never used by the lumber company which was located only half a block away; that at the time of purchase of the building, the wiring was disconnected and all heating oil removed; that the windows and rear entrance of the building were boarded up to prevent vandalism of which neighbors had complained; and that lumber company employees entered the building through doors at the front of the building which were kept locked when not in use.

The building was insured against fire by defendant in November of 1959, the same month in which the property was purchased from the Bonners. A routine inspection of the risk was made by a representative of defendant one month after the policy was issued.

The only controverted issue of fact presented to the jury was the question of occupancy as posed in the spe-

cial interrogatory. On this issue, the testimony of the witnesses was conflicting in almost all respects.

Bernard Zechman testified that on the date of the fire the building contained some common brick, about four or five thousand face brick, and about twelve or fifteen bags of mortar, all located in several piles throughout the building, and that this brick remained in the building all day on the day of the fire. Glen Trester, an employee of the Garfield Lumber Company, testified that there was some brick in the building, piled in low piles; he was, however, uncertain as to the quantity of brick, but stated that there was no common brick left in the building on the date of the fire.

Zechman's estimate of the quantity of brick in the building at the time of the fire was strongly controverted by a number of witnesses produced by the defendant. Three fire department employees, two near neighbors of the building, and two representatives of the defendant, all present at or after the fire, testified that they had gone through the building and found no brick or mortar, with the exception of a few scattered, broken brick, and that the only contents of the building were some remnants of office equipment and a few scattered invoices on the letterhead of the Bonner Marshall concern.

There was also conflict in the testimony as to the extent to which the lumber company had used the premises during the sixty-day period prior to the fire. Bernard Zechman testified that he visited the premises several times a week, and that Glen Trester made deliveries to and from the warehouse by truck or handcart. Glen Trester, called as plaintiff's witness, testified that the building was in use as a warehouse, and estimated that he had hauled brick into and out of the building about twelve times during regular working hours in the sixty-day period prior to the fire.

318

Two neighbors who testified that there was no brick in the building after the fire, stated also that they had seen no movement of goods into or out of the build-ing during this period. One of these neighbors, Patrick Lynch, admitted, however, that his work took him away from the neighborhood during the working hours of the day, and that he wouldn't know what happened while he was away. The other close neighbor of the building, Francis J. Hesser, an ornamental iron contractor whose business and home were within sight of the building, indicated that he was continually at his place of business and had seen nothing moved into or out of the building during the relevant period. He admitted that there were times when he was not present and did not know everything that may have been moved into or out of the building. He also admit-ted that from March to September of 1960 he had been working on a contracting project in Arlington Heights and during that time had been in Arlington Heights on about twenty occasions for a number of hours of the working day each time.

Shortly after the fire, Ritter and Company, insur-ance adjusters, were employed by Mr. Zechman to represent the insured in its negotiations with the de-fendant insurer. Ritter and Company prepared an exhaustive tabulation of the loss, no less than sixteen pages in length which, accompanied by a summary of its contents, was received by the insurer within the sixty-day period after the fire, this being the time in which the insured was required under the policy to submit proofs of loss.

Also within this sixty-day period, Mr. John Hagen-sick, fire loss manager and general adjuster for the defendant insurer, having inspected the damage on the day of the fire, agreed with a representative of Ritter and Company that the loss equalled or exceeded the policy limits of $15,000. On October 27th, at the

time of making an examination under oath of Mr. Bernard Zechman, Mr. Hagensick placed in written form his previous agreement with Mr. Ritter that the loss was $15,000, the limit of the policy. This agreement was written out on the bottom of a non-waiver agreement dated October 5, 1960, which provided that any action taken by the insurer in investigating the claim would not invalidate any terms of the policy. On November 23, 1960 Mr. Hagensick wrote to the plaintiff indicating that the claim would not be paid because of violation of the occupancy clause of the policy.

For reasons presently to be discussed, we are of the opinion that the verdict of the jury should not have been allowed to stand, and that there must be a new trial. However, for the guidance of the trial court on retrial, we will discuss the general rulings on trial of the case which defendant urges as error on appeal.

■ First, we think that the issue of vacancy or occupancy was properly before the jury. There was conflict in the testimony of the witnesses with respect to the contents of the building at the time of the fire as well as to the extent of use during the sixty-day period preceding the fire. Therefore, neither party was entitled to a directed verdict and all motions to that effect were properly denied.

■ The defendant urges as grounds for reversal the admitted failure of the plaintiff to file a formal proof of loss, as required by the terms of the policy. In refusing defendant's requested instruction to the jury respecting such proofs of loss, the trial court properly held as a matter of law that the conduct of the insurer's representatives was such as to constitute a waiver of proofs. It is admitted by defendant that two of its representatives inspected the damage to the premises on the day of the fire. It is uncontroverted that defendant's fire loss manager received the tabu-

lation of loss prepared by Ritter and Company. Moreover, it is admitted that before the expiration of the sixty-day period allowed for the submission of formal proofs, this same representative agreed with plaintiff's adjusters that the loss equalled the limits of the policy. We can think of no more persuasive evidence that the actual proofs of loss supplied were adequate than the willingness of defendant's representative to agree to the amount of the loss based upon the evidence placed before him. By the same token, nothing could be better calculated to lull the insured into inaction with respect to filing additional proofs of loss than the willingness of the defendant's representative to agree on the amount of the loss without requiring further proofs, or any mention by defendant's representative of the policy requirements of such proofs. We are convinced that there was substantial compliance with the terms of the policy by plaintiff, and that the conduct of the defendant constituted a waiver of formal proof of loss. Heirty v. North River Ins. Co., 3 Ill App2d 426, 429–30, 122 NE2d 592 (1954); First Nat. Bank of Highland Park v. Boston Ins. Co., 17 Ill App2d 159, 164, 149 NE2d 420 (1958), affd 17 Ill2d 147, 160 NE2d 802 (1959). The facts with respect to this issue being either stipulated or uncontroverted, there was no issue for the jury's determination.

■ It is the defendant's next contention that recovery should be denied on the grounds that the insured lacked an insurable interest in the premises at the time of the fire. On July 14, 1960 the City of Chicago filed a petition to condemn the property at 4028–30 West Taylor Street. The city's petition was still pending and undisposed of at the time of the fire. A jury subsequently entered a verdict of $6775 in the condemnation proceedings representing the value of the property at the time the petition to condemn was

filed. Defendant suggests that the jury's verdict having been affirmed (City of Chicago v. Hamlin, 24 Ill2d 148, 180 NE2d 473 (1962)), title relates back to the date of filing the petition to condemn, upon payment of compensation by the condemning authority.

We think there is no merit to this contention insofar as it is directed to the relevant question of plaintiff's insurable interest on the date of the fire. At that date, the city's petition was pending but had not been acted upon. At the date of the fire there had been no change in the legal title to the property, or even a jury verdict in the proceedings by the city. At that stage of the condemnation proceedings the city might have abandoned its petition altogether upon the payment of the property owners' expenses in the proceedings, as provided by statute (Ill Rev Stats 1961, c 47, § 10(a)). This being so, it seems clear to us that plaintiff did have an insurable interest in the property on the day of the fire. The fact that the city continued its proceedings against the property after the fire, rather than exercising its statutory prerogative to abandon them, is certainly a fortunate circumstance for the plaintiff, but it is not an event which defendant may seize upon in an effort to avoid liability on its contract of insurance.

In a recent well reasoned opinion, the Circuit Court of Appeals for the Seventh Circuit passed squarely upon this issue. In Edlin v. Security Ins. Co., 269 F2d 159 (1959), the court interpreted Illinois law to be that regardless of the pendency of condemnation proceedings on the date of a fire, the insured has an insurable interest in the property on that date so as to be entitled to a full recovery from the insurer.

In so holding, the court relied heavily upon the decision in First Nat. Bank of Highland Park v. Boston Ins. Co., 17 Ill2d 147, 160 NE2d 802 (1959), wherein

the Supreme Court of this State affirming the Appellate Court 17 Ill App2d 159, 149 NE2d 420 (1958) held that upon destruction by fire of insured property which was subject to a partially executed contract of sale, the insured vendor was entitled to a full recovery from the insurer, and was not to be limited in his recovery to the unpaid balance of the contract of sale, as argued by the insurer. The court rejected the notion advanced by the insurer that the doctrine of equitable conversion, appropriately applied between vendor and vendee, should be applied for the benefit of the vendor's insurer so as to limit the vendor's insurance recovery to the unpaid balance on the contract of sale. The court indicated at page 150 that to apply the doctrine of equitable conversion for the benefit of one other than the parties to the contract and those claiming under them was to "transplant the doctrine of equitable conversion into an area where it does not belong." If the liability of a vendor's insurer under a specifically enforceable contract of sale is not limited to the unpaid balance of the contract on the date of the fire, we cannot conceive of any reason why a subsequent condemnation award should inure to the insurer's benefit in this case, when the condemning authority might have wholly abandoned its proceedings after the fire occurred. Accordingly, we are of the opinion that the condemnation award received by plaintiff does not limit or bar plaintiff's right to recover in this action.

■ Finally, it is urged by defendant that the verdict of the jury, as rendered, should be set aside as a compromise on the question of liability. With this we must agree. The verdict is anomalous in two important respects.

First, the jury left unanswered the special interrogatory relating to the hotly contested question of occupancy, which was the only controverted issue of fact

323

placed before it. In addition, the jury assessed damages of $6000 in spite of the fact that the parties had agreed that the loss was equal to the policy limit of $15,000. This agreement as to damages was placed before the jury in the form of exhibits and the testimony of both parties' witnesses. Counsel on appeal, who also represented the parties at trial, have informed us in oral argument that no evidence contradicting the agreed figure of $15,000 was placed before the jury. The jury was not informed of the previous condemnation award in the proceedings by the City of Chicago.

In Luner v. Gelles, 314 Ill App 659, 662–3, 42 NE2d 313 (1942), the court observed in granting plaintiff's motion for a new trial that "it is obvious that the jury either found the defendant guilty and disregarded the proper elements of damages to which plaintiff was entitled, or made a compromise between questionable guilt on the part of the defendant and actual expenditures on the part of the plaintiff." In Hughes v. Bandy, 336 Ill App 472, 479, 84 NE2d 664 (1949), affd 404 Ill 74, 87 NE2d 855 (1949), an action for personal injuries in which the undisputed damages were $1218.25 and the jury found a verdict for plaintiff of $615, the plaintiff's motion for judgment notwithstanding the verdict in the agreed amount of $1218.25 was granted by the trial court. The Appellate Court reversed the action of the trial court, noting that the granting of a motion for judgment notwithstanding the verdict was improper where the evidence as to liability was in conflict. However, the court went on to say at page 479 that "in the instant case it is our opinion that the verdict was obviously a compromise verdict and should not have been permitted to stand if the plaintiff had made a motion for a new trial."

324

We therefore hold that this case must be retried because of the jury's obvious compromise on the question of liability. That a compromise of this character was made is clear from a consideration of the anomalous verdict returned. It is demonstrated by the jury's refusal to answer the pertinent interrogatory regarding occupancy, coupled with the award of palpably inadequate damages bearing no reasonable relationship to any evidence of damages placed before it, being in fact little more than one-third the damages agreed upon by the parties themselves.

In so holding, however, we do not wish to be understood as suggesting that all jury "compromises" constitute reversible error. We are not unmindful of the fact that members of a jury, agreed as to liability but faced with a difficult problem as to the amount of damages, might well compromise their respective views as to the proper award. We make no suggestion that jury room give-and-take is per se improper, or that in the usual case courts of review should undertake a reconstruction of the jury's deliberative process. At the same time, we think it is clear that the case before us is not the usual case.

Accordingly, the judgment of the Municipal Court of Chicago is reversed and the cause remanded for a new trial on the issue of occupancy.

Judgment reversed and cause remanded with directions.

BRYANT, P. J. and BURKE, J., concur.