DAN L. WHITTEN *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. CINCINNATI INSURANCE COMPANY, Defendant-Appellant and Cross-Appellee.

Fourth District   No. 4—89—0123

Opinion filed September 28, 1989.

Heyl, Royster, Voelker & Allen, of Springfield (Michael C. Upperman, Jr., of counsel), for appellant.

Law Office of Timothy D. Sturm, of Springfield (Timothy D. Sturm, of counsel), for appellees.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Topline Systems, Inc. (Topline), contracted to purchase three acres of land, a house, and a barn from Federal Land Bank (Bank). Closing was conditioned on plaintiffs Dan and Leona Whitten, officers and common shareholders of Topline, procuring an insurance policy for $70,000 on the property and the Bank obtaining clear title. The Whittens purchased homeowner's insurance from defendant effective September 15, 1986. Defendant knew plaintiffs did not own the property at that time. Topline was listed on the policy as an additional insured. Due to problems in obtaining clear title, the Bank postponed closing on numerous occasions. On January 19, 1987, prior to closing, fire destroyed the house. The Bank recovered from its insurer but defendant refused to pay plaintiffs, claiming they had no insurable interest. The Whittens sued for declaratory judgment. They later moved for summary judgment, which the Sangamon County circuit court granted. The court awarded plaintiffs $26,000. Defendant appeals the finding that plaintiffs had an insurable interest and the award of $26,000. Defendant also claims the lower court erred in allowing the Whittens to amend their complaint to add Topline as a plaintiff. Plaintiffs cross-appeal, claiming they are entitled to $70,000, the policy amount.

The plaintiffs, Dan and Leona Whitten, began leasing the property in question from Kenneth Taft in July of 1984. They paid $450 per month rent and had renters' insurance on the property through defendant. Plaintiffs intended to use the property for residential and business purposes and purchased Topline Systems, Inc., an energy management firm, in January of 1985.

The plaintiffs moved the firm's physical assets to the leased property and stored equipment and parts in the barn. The company had an office in the home and stored computer equipment and sales information in the basement. The insurance policy issued by defendant covering Topline applied only to assets stored in the barn, not to equipment located in the house. That policy is not in issue here.

Taft, lessor of the property, went bankrupt in November of 1984 and the Bank foreclosed on the property. Plaintiffs continued renting the property for $450 per month under a lease with the Bank.

In November of 1985 plaintiffs began negotiating with the Bank to purchase the property. Topline entered a written contract with the Bank on November 28, 1985, to purchase the property for $67,500. Plaintiffs made a $1,500 down payment on that date. Plaintiffs had renewed their lease agreement with the Bank on November 1, 1985, for a six-month period (through April 30, 1986), the time believed necessary for closing. They also began making monthly payments toward the purchase price, in addition to monthly rent payments.

The Bank could not produce clear title by April 30, 1986. Plaintiffs and the Bank did not renew the lease and plaintiffs stopped paying rent on April 30. Plaintiffs and the Bank orally agreed the lease would continue in effect. The Bank did not require plaintiffs to pay rent but did require them to maintain the property.

The Bank continued to assure plaintiffs they would get clear title and set closing for September 21, 1986. In August or September of 1986, the Bank sent plaintiffs a letter requiring them to present a certificate of insurance on the property for a minimum of $70,000 as a condition of closing the transaction.

Plaintiffs contacted defendant through its agent, Robert Brown, to obtain homeowner's insurance. Plaintiffs explained they were in the process of buying the property and expected to close on September 21, 1986. Brown issued a homeowner's policy effective September 15, 1986, through September 15, 1989. Plaintiffs cancelled their renter's insurance on the date the homeowner's policy became effective.

The policy showed Dan and Leona Whitten as the insureds and Topline as an additional insured. The policy valued the covered property as follows: dwelling $70,000, other structures $7,000, and personal property $35,000.

Once again the Bank failed to obtain clear title and the September 21 closing date passed. The Bank indicated closing would occur within a few days, and Dan Whitten testified Brown told him they would just leave things as they were with the homeowner's policy. The transaction did not close in late September and Whitten again called Brown. He told Brown he would keep him apprised of progress in closing the transaction and Brown consented to such an arrangement. Two subsequent closing dates were set, one in December of 1986 and one in January of 1987. The Bank failed to meet both deadlines.

On January 19, 1987, the home was hit by lightning and burned to the ground. Plaintiffs were en route to Chicago at the time, and due

to the severity of the storm, they were unable to return home until January 21, 1987. They immediately notified Robert Brown and the Bank of the loss. Brown informed plaintiffs they would have to deal with defendant's agent Pat Fitzgerald.

During subsequent conversations with the Bank, plaintiffs learned the Bank had $56,000 of insurance on the property. The Bank recovered $51,000, the value of the policy less a $5,000 deductible. Plaintiffs were not covered on the Bank's policy.

Plaintiffs and the Bank entered a new lease agreement after the fire under which plaintiffs paid $50-per-month rent. The parties terminated the real estate sales contract and the Bank returned plaintiffs' earnest money and additional monies plaintiffs had paid toward the purchase price. Plaintiffs expressed continuing interest in purchasing the property, and on May 12, 1987, the parties entered a new purchase agreement and closed shortly thereafter. The Bank reduced the purchase price by the $51,000 it received from its insurer and sold the property to Airtroll, a company owned by plaintiffs, for $16,500.

According to Dan Whitten, defendant originally agreed to honor the insurance contract and pay plaintiffs $70,000. Once the Bank's insurer stepped in, however, defendant refused to pay and Fitzgerald told plaintiffs defendant did not owe them any money under the policy. All payments from defendant stopped. Plaintiffs had accepted partial payment, pursuant to the policy, for temporary living expenses and total reimbursement for personal property lost in the fire. Plaintiffs now reside in a trailer on the premises.

On July 20, 1987, plaintiffs filed a motion for declaratory judgment against defendant in Sangamon County circuit court. During the next six months, Dan and Leona Whitten responded to interrogatories propounded by defendant, defendant moved to dismiss plaintiffs' complaint for declaratory judgment, and plaintiffs responded. Defendant finally answered plaintiffs' complaint on January 20, 1988.

The answer admitted issuing the homeowner's policy effective September 15, 1986, and the amount of coverage. Defendant also admitted plaintiffs complied with policy requirements for notifying defendant of the loss. Defendant claimed it had insufficient information to admit or deny plaintiffs' claim that they entered a purchase agreement with the Bank on October 28, 1986, and the claim that lightning started the fire which destroyed the house. Defendant admitted it refused to pay plaintiffs $70,000 but denied it owed plaintiffs the money. Finally, defendant denied plaintiffs' claim they were entitled to declaratory judgment.

On February 1, 1988, defendant filed a motion for leave to amend

its answer to add affirmative defenses. Defendant claimed plaintiffs never had an insurable interest in the property and did not suffer an actual loss of $70,000. The docket entry and record on appeal indicate the trial court never ruled on defendant's motion to amend.

Plaintiffs filed a motion for summary judgment on October 24, 1988. The written order granting summary judgment was entered January 25, 1989. The court awarded plaintiffs $26,000 on December 20, 1988. Defendant filed its notice of appeal on February 6, 1989, and plaintiffs subsequently timely filed a cross-appeal.

■ The first issue raised by respondent challenges the trial court's grant of summary judgment for plaintiff, a ruling which had the effect of finding plaintiffs had an insurable interest in the property. This court, in *Bellmer v. Charter Security Life Insurance Co.* (1986), 140 Ill. App. 3d 752, 754-55, 488 N.E.2d 1338, 1340, set forth the standard of review for summary judgments:

> "In reviewing an order for summary judgment, this court must consider all of the facts revealed in the record and all of the grounds alleged by the parties in order to determine whether a genuine issue as to a material fact does still exist. On appeal, all of the facts must be viewed in a light most favorable to the nonmoving party. The reviewing court will reverse the order granting summary judgment if it determines that a genuine issue of material fact does exist. (*Casteel v. Smith* (1982), 109 Ill. App. 3d 1094, 1098-99, 441 N.E.2d 860, 863, and cases cited therein.) Thus, on examination of the record, if it can be fairly said that a triable issue of fact exists, the motion for summary judgment should be denied ***. The use of summary judgment is proper when it is clear that all material facts are before the court, the issues are defined, and the parties are agreed that only a question of law is involved. (*Allen v. Meyer* (1958), 14 Ill. 2d 284, 292, 152 N.E.2d 576, 580)."

See also *Seefeldt v. Millikin National Bank* (1987), 154 Ill. App. 3d 715, 506 N.E.2d 1052.

■ Plaintiffs argue this issue is not properly before this court because the trial court never ruled on defendant's motion for leave to amend its answer to add affirmative defenses, including the defense that plaintiffs had no insurable interest. Defendant appeals the trial court's summary judgment decision for plaintiffs, a decision which found plaintiffs had an insurable interest. Thus, the issue is properly before this court and plaintiffs' procedural argument merits no further discussion.

■ Defendant argues plaintiffs did not have an insurable interest

at the time they purchased the insurance policy. First, because Topline contracted with the Bank to purchase the property, Topline should have purchased the insurance. (The contract lists as purchaser, Topline Systems, Inc., by Danny L. Whitten, president, Leona M. Whitten, secretary-treasurer. Both Whittens signed the contract.) Defendant argues plaintiffs, as Topline stockholders, could not buy insurance for the corporation. Defendant cites no authority for this proposition. The argument is irrelevant, however, because the policy names Topline as an additional insured.

■ Second, defendant argues plaintiffs did not own the property the policy insured on the date the policy was purchased and thus plaintiffs did not have an insurable interest. We reject this argument. Careful review of the policy has failed to locate a clause making the policy's validity contingent on ownership. The contract simply does not require the insured to own the insured property. "[A] policy may by its terms cover property generally without regard to whether the insured was the owner and without regard to the capacity in which the insured held the property." (8 G. Couch, Insurance §37A:1 (rev. 2d ed. 1985).) The policy defines "insured location" as including the "residence premises," defined as "the dwelling, other structures, grounds or that part of any other building where you reside and which is shown as the 'residence premises' in the Declarations." Ownership is not required under either definition; use and residence suffice for coverage.

■ ■ Finally, defendant argues plaintiffs had no insurable interest in the property at the time of the loss because they suffered no pecuniary loss. After the fire, the Bank returned plaintiffs' earnest money and other monies paid toward the purchase price and terminated the contract. Plaintiffs later bought the property for $16,500 (purchase price of $67,000 less the $51,000 the Bank received from its insurer). Plaintiffs still have to "buy" a house, but now instead of purchasing a house from the Bank, as provided in the original contract, they will have to build a new one.

Plaintiffs rely on the insurance contract which states on its face it became effective on September 15, 1986. The defendant's agent, Robert Brown, knew the sale did not close on September 21 or thereafter. He agreed to let the policy remain in effect, with the understanding Dan Whitten would contact him when closing occurred. The policy was clearly in effect on the date of the loss.

The Illinois Insurance Code (Ill. Rev. Stat. 1987, ch. 73, par. 613 *et seq.*) does not define "insurable interest." Case law does define the phrase and makes clear that an insurable interest is essential to the

validity of an insurance contract.

"An insurable interest at the time of the loss is essential to the validity of an insurance policy. (*Patterson v. Durand Farmers Mutual Fire Insurance Co.* (1940), 303 Ill. App. 128, 24 N.E.2d 740.) An insurable interest, however, is not necessarily equated with clear title. (*Reznick v. Home Insurance Co.* (1977), 45 Ill. App. 3d 1058, 360 N.E.2d 461.) As was set forth in *Beddow v. Hicks* (1940), 303 Ill. App. 247, 258, 25 N.E.2d 93, 98,

'It has long been the settled law in this State that a party has an insurable interest in property from the existence of which he receives a benefit or from the destruction of which he will suffer a pecuniary loss, although he has no title to or possession of the premises.'

*** Thus, generally speaking, a person has an insurable interest in property whenever he would profit by or gain some advantage by its continued existence or suffer loss or disadvantage by its destruction. (*Reznick v. Home Insurance Co.* (1977), 45 Ill. App. 3d 1058, 360 N.E.2d 461; *Lieberman v. Hartford Fire Insurance Co.* (1972), 6 Ill. App. 3d 948, 287 N.E.2d 38; see 44 C.J.S. *Insurance* secs. 180, 181 (1945).) It is enough if one claiming an insurable interest holds such a relation to the property that its destruction by the peril insured against involves pecuniary loss to him. (*Home Insurance Co. v. Mendenhall* (1897), 164 Ill. 458, 45 N.E. 1078; *Welch v. Northern Assurance Co., Ltd.* (1921), 223 Ill. App. 77.) As the court observed in *Prince v. Royal Indemnity Co.* (7th Cir. 1976), 541 F.2d 646, 649, *cert. denied* (1977), 429 U.S. 1094, 51 L. Ed. 2d 540, 97 S. Ct. 1108, the reason for the requirement of an insurable interest is " 'to prevent the use of insurance for illegitimate purposes. It should not be extended beyond the reasons for it by excessively technical construction' " (quoting *Womble v. Dubuque Fire & Marine Insurance Co.* (1941), 310 Mass. 142, 147, 37 N.E.2d 263, 266)." *Hawkeye-Security Insurance Co. v. Reeg* (1984), 128 Ill. App. 3d 352, 354-55, 470 N.E.2d 1103, 1105-06.

This has long been the rule in Illinois. In 1881 the second district wrote:

"The courts, in earlier times, showed a disposition to restrict [the definition of insurable interest] to a 'clear, substantial, vested pecuniary interest,' and to deny its applicability to mere expectancy without any vested right, yet the tendency of mod-

ern decisions is to relax the stringency of the earlier cases, and to admit to the protection of the contract, whatever act, event or property bears such a relation to the person seeking insurance that it can be said with a reasonable degree of probability to have a bearing upon his prospective pecuniary condition: May on Insurance, page 76, §76." *Agricultural Insurance Co. v. Clancey* (1881), 9 Ill. App. 137, 139-40. See also *Downs v. Michigan Commercial Insurance Co.* (1910), 157 Ill. App. 32, 37.

We affirm the trial court's award of summary judgment for plaintiffs as we agree they had an insurable interest in the property at the time of the loss. Plaintiffs suffered a pecuniary loss when the house burned.

We note the policy states it is void if the insured intentionally conceals or misrepresents any material fact or circumstance, makes false statements, or engages in fraudulent conduct relating to the insurance. The record is clear and the parties agree that there was no such violation by the insured. There is absolutely no evidence of fraud by the plaintiffs. They requested and received a homeowner's policy from defendant after full disclosure of the status of the title and payment of the premiums. The agent made the policy effective as of September 15, seven days before closing was scheduled. Subsequently, he agreed to leave the policy in effect though he knew plaintiffs did not own the property. Defendant cannot now claim plaintiffs had no insurable interest.

The next issue concerns damages. The trial court awarded plaintiffs $26,000, the difference between the appraised value of the property ($77,000) and the amount the Bank received from its insurer ($51,000). Defendant makes two arguments on this issue. First, defendant argues that pursuant to the terms of the policy, it must pay only the actual cash value of the property. Because plaintiffs produced no evidence as to the property's cash value, defendant argues, they are not entitled to recover. The policy does not define cash value, but case law defines it as replacement cost less depreciation. *Smith v. Allemannia Fire Insurance Co.* (1920), 219 Ill. App. 506, 513.

Defendant's second argument is based on the "Insurable Interest and Limit of Liability" clause found on page seven of the policy. The clause states, "Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss: a. to the insured for more than the amount of the **insured's** interest at the time of the loss ***." Defendant argues that if plaintiffs have an interest, it is limited to the amount of the earnest money paid plus

other payments made toward the contract price. To allow plaintiffs to recover additional sums would provide plaintiffs with an economic windfall.

Plaintiffs respond by arguing defendant should pay them $70,000, the amount of the policy. Plaintiffs argue that if actual cash value is used as the measure of compensation, they are entitled to $63,109, which is replacement cost ($72,124) minus 12% depreciation. (The appraiser depreciated the total replacement value for all the property at 12%. The parties stipulated to admission of the appraiser's report.) Plaintiffs also cross-appealed, arguing the trial court should have awarded them $70,000, the amount of the policy.

The loss settlement clause of the policy states in pertinent part:

"3. Loss Settlement. Covered property losses are settled as follows:
\* \* \*

b. Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

(1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

(a) the limit of liability under this policy that applies to the building;

(b) the replacement cost of that part of the building damaged for like construction and use on the same premises; or

(c) the necessary amount actually spent to repair or replace the damaged building.
\* \* \*

(4) We will pay no more than the actual cash value of the damage unless:

(a) actual repair or replacement is complete; or

(b) the cost to repair or replace the damage is both:

(i) less than 5% of the amount of insurance in this policy on the building; and

(ii) less than $1000.

(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability on a replacement cost basis."

Thus the policy sets forth three methods for determining the loss settlement: replacement cost ($72,124), policy amount ($70,000), and actual cash value ($63,469).

Public policy considerations preclude an award to plaintiff of the amount of the policy. We cannot encourage future fraud on insurance companies. Such a decision might well provide an incentive for an unscrupulous home buyer to insure the property to be purchased, burn it, pay a reduced price for it, and then recover fully under the insurance policy. Further, allowing the full policy amount in this case would unjustly enrich the plaintiffs, another result public policy will not allow.

■ The trial court awarded plaintiffs $26,000, the appraised value of the property ($77,000) less the amount received by the Bank from its insurer and deducted from the purchase price ($51,000). The trial court erred in using the appraised value to determine the plaintiffs' recovery. None of the policy's formulas for calculating loss settlement use appraised value. The court should have looked to the policy and used the policy amount ($70,000) as the figure from which it subtracted the $51,000. We find the trial court erred in awarding plaintiffs $26,000, as they are entitled to recover only $19,000.

■ Finally, defendant argues the trial court erred when it allowed plaintiffs to amend their complaint to add Topline as an additional insured. The policy provides, "No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss." The fire occurred on January 19, 1987. Dan and Leona Whitten filed their complaint for declaratory judgment on July 20, 1987. Plaintiffs made a motion to amend the complaint to add Topline as a plaintiff on November 30, 1988. The motion to amend was made one month after the court granted plaintiffs' motion for summary judgment but two months prior to the entry of summary judgment. The court allowed the motion to amend at the hearing on damages. In its answer, defendant admitted plaintiffs complied with policy provisions.

Defendant now argues the motion to amend was barred by the one-year limitation period in the contract and cannot relate back to the original complaint under the provisions of section 2—616 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—616). Defendant argues that because the Whittens had no insurable interest, their complaint failed to state a cause of action and thus the complaint cannot be amended.

Section 2—616(b) provides:

"The cause of action, cross claim or defense set up in any

amended pleading shall not be barred by lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if the time prescribed or limited had not expired when the original pleading was filed, and if it shall appear from the original and amended pleadings that the cause of action asserted, or the defense or cross claim interposed in the amended pleading grew out of the same transaction or occurrence set up in the original pleading." Ill. Rev. Stat. 1987, ch. 110, par. 2—616(b).

Case law holds:

"An amended complaint is deemed to relate back to the original pleading when the original pleading provides the defendant with all the information necessary to prepare his defense to the subsequently asserted claim. (*Weidner v. Carle Foundation Hospital* (1987), 159 Ill. App. 3d 710, 712, 512 N.E.2d 824, 825.) The rationale for this rule is that a defendant will not be prejudiced so long as his attention has been directed to the facts which form the basis of the claim lodged against him within the prescribed time. *Perkins v. Pepsi-Cola General Bottlers, Inc.* (1987), 158 Ill. App. 3d 893, 900, 511 N.E.2d 901, 906." *Bailey v. Petroff* (1988), 170 Ill. App. 3d 791, 797, 525 N.E.2d 278, 282.

██ The amended complaint arose out of the same events as the original complaint and provided defendant with all the information necessary to prepare a defense. Defendant was not prejudiced by the court's approval of the motion to amend. For these reasons, and because we have held plaintiffs had an insurable interest, we reject defendant's argument and find plaintiffs' amended complaint related back to the original complaint. There was no error.

Pursuant to Supreme Court Rule 366 (107 Ill. 2d R. 366), the judgment of the circuit court is modified and judgment is entered for the plaintiff in the amount of $19,000.

Affirmed as modified.

SPITZ and GREEN, JJ., concur.