In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-3116

WILLIAM M. WERNER,

*Plaintiff-Appellant,*

*v.*

AUTO-OWNERS INSURANCE COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 3:18-cv-03190-SEM-TSH — **Sue E. Myerscough**, *Judge.*

ARGUED JUNE 7, 2022 — DECIDED JULY 9, 2024

Before HAMILTON, KIRSCH, and JACKSON-AKIWUMI, *Circuit Judges.*

HAMILTON, *Circuit Judge.* This appeal presents an issue under Illinois insurance law about the extent of an owner's insurable interest when a home is in foreclosure proceedings. The narrow issue is whether and to what extent the owner of a home in foreclosure has an insurable interest in the property *after* a judgment of foreclosure, *after* a judicial sale, and *after*

expiration of all the owner's rights of redemption, but *before* judicial confirmation of the foreclosure sale.

Plaintiff-appellant William Werner's home in Springfield, Illinois, was in foreclosure when it burned down in 2017. On cross-motions for summary judgment, the district court ruled that Werner had lost any insurable interest in the full value of the property after the judicial sale occurred and all of Werner's rights of redemption had expired. The court held that at the time of the fire, Werner's only remaining insurable interest in the property was based on his narrow right under 735 ILCS 5/15-1701(b) & (c)(1) to occupy the home until 30 days after the judicial sale was confirmed. The court awarded him the rental value of that temporary right, not quite $4,000, which was much less than Werner sought.

Werner has appealed, and we affirm. When his home burned down, Werner still held legal title to the property, but he had no legal right to redeem it from foreclosure or otherwise to retain it. Its future was out of his control. We agree with Judge Myerscough that his only insurable interest was in the value of his temporary right of possession.

I.  *Factual and Procedural Background*

A.  *The Mortgage, Foreclosure, and Sale*

Werner built a home in Springfield, Illinois, in the early 1980s. He borrowed money to build the home, and the loan was secured by a mortgage. He later refinanced the loan and mortgage through Nationstar Mortgage, LLC. Werner fell behind in his mortgage payments, and in May 2013, Nationstar filed a foreclosure action in an Illinois state court. The court entered a default foreclosure judgment against Werner, finding that he owed Nationstar $80,398.73 and that

the debt was secured by a valid mortgage against his home. The court ordered the property to be sold if, as eventually occurred, Werner's statutory redemption rights expired.

The judicial sale of the property was delayed for several years after Werner sought protection from his creditors in bankruptcy. When the bankruptcy court lifted the stay on the foreclosure proceedings, Werner's home was put up for a judicial sale to satisfy the foreclosure judgment. On June 14, 2017, a third-party buyer, Triple J Property Brothers, made the highest bid: $23,606. A month later, Nationstar moved to confirm the judicial sale to Triple J. Werner opposed confirmation on three grounds, arguing that (1) Nationstar lacked standing to sue; (2) Nationstar improperly calculated the interest due on any deficiency judgment; and (3) the sale price was unconscionably low.

B. *The Fire and Insurance Issues*

Before the state court ruled on Nationstar's motion to confirm the sale, a fire destroyed Werner's home. The fire was apparently caused by a malfunctioning electrical panel. (In light of the relevant case law and public policy concerns discussed below on the doctrine of insurable interests, we must note here that there is no indication that Werner caused the fire, let alone that he did so deliberately.) In October 2017, after the fire, the state court confirmed the sale to Triple J. The court ruled that Nationstar was entitled to the sale proceeds of $23,606 and ordered Werner to vacate the home within 30 days. The court did not impose any deficiency judgment against Werner personally.

When Werner's home burned down, it was insured against damage by a policy through defendant Auto-Owners

Insurance Company. The policy provided in relevant part: "we will not pay more than the insurable interest the insured has in the covered property at the time of loss," subject to a primary policy limit of $174,000. Werner and Auto-Owners estimated that it would cost about $225,000 to replace the home. Werner filed a claim seeking to recover his policy limit on the home itself and two smaller coverages (for other structures and debris removal). In all, Werner sought a combined recovery of just over $190,000. Auto-Owners investigated the claim and learned that the property had been sold at the judicial sale. It then denied Werner's claim for the full replacement value of the home in its entirety, though it covered his claim for lost personal property in the home.

C. *The District Court's Ruling*

Werner filed this suit and won a modest partial victory. He invoked the court's diversity jurisdiction—Werner is an Illinois citizen and Auto-Owners is a Michigan citizen—and brought two claims under Illinois law, one for breach of the insurance contract and another for vexatious delay in settling his claim under an Illinois statute, 215 ILCS 5/155. On cross-motions for summary judgment, the district court granted partial summary judgment in favor of Werner on his breach-of-contract claim. It found that Werner had an insurable interest in his home after the judicial sale—but only to the extent that Illinois law granted him the right to occupy the premises for up to 30 days after the state court confirmed the sale. The court granted summary judgment to Auto-Owners on Werner's vexatious delay claim, finding that Auto-Owners had taken a reasonable legal position on an unsettled area of law. Werner does not challenge this ruling on appeal. The district court then held a bench trial on damages. The court

found that Werner's right to occupy the residence for up to 30 days after confirmation of the sale was worth $3,966.67 and awarded Werner that amount. Auto-Owners has not cross-appealed that judgment.

II.  *Analysis*

We review the entry of summary judgment de novo, without deference to the district court, *Gill v. Scholz*, 962 F.3d 360, 363 (7th Cir. 2020), and we apply Illinois law as we believe the Illinois Supreme Court would, *In re I80 Equipment, LLC*, 938 F.3d 866, 869–70 (7th Cir. 2019).

A.  *The Insurable Interest Principle*

The concept of an insurable interest lies at the heart of the business and law of insurance. It separates the sharing of genuine risks of loss from wagers about calamities that may befall others. See generally *Chicago Title & Trust Co. v. U.S. Fidelity & Guaranty Co.*, 511 F.2d 241, 246–48 (7th Cir. 1975) (explaining and enforcing insurable interest requirement); 1 New Appleman on Insurance Law Library Edition § 1.02 (2024) (noting eighteenth-century origin of doctrine in England for insurance of ships and cargo, and later for life insurance).

Werner contends that he had an insurable interest for his home's full replacement value when it was destroyed because the judicial sale had not yet been confirmed and he still held title to the property. To recover on his insurance contract, Werner needed to prove that he suffered damages when Auto-Owners denied his claim. See *Norem v. Lincoln Benefit Life Co.*, 737 F.3d 1145, 1148 (7th Cir. 2013). Werner's possible damages are limited to no more than the value of his insurable interest in his home (subject to policy limits). See *Chicago Title & Trust*

*Co.*, 511 F.2d at 246–47, citing B. Harnett & J. Thornton, *Insurable Interest in Property: A Socio-Economic Reevaluation of a Legal Concept*, 48 Colum. L. Rev. 1162, 1175–78 (1948) (explaining that requirement of an insurable interest limits damages to the scope of the insurable interest).

Illinois does not define insurable interest by statute, nor is the term defined in these parties' insurance contract. The scope of an insured party's insurable interest is essential, however, and Illinois courts often address questions of insurable interest. They have explained that a person has an insurable interest in property when the person "would profit by or gain some advantage by its continued existence and suffer loss or disadvantage by its destruction." *Murphy v. State Farm Fire & Casualty Co.*, 2012 IL App (1st) 112143, ¶ 9, 978 N.E.2d 649, 652 (internal quotations omitted).

The insurable interest requirement can pose challenges in cases like this one, where a loss occurs when a change in ownership, control, or even physical condition is imminent or already underway. Cases address looming demolition and ongoing condemnation proceedings, as well as foreclosures. In such cases, Illinois courts teach that an insurable interest is assessed at the moment of loss and depends on the insured's control over the property. See *id.* ¶ 16, 978 N.E.2d at 653. Under this framework, courts have found that an owner's insurable interest after a fire destroyed his or her property already set for demolition is still the full value of the property, so long as the owner retained control to stop the scheduled demolition. See *id.* (fire occurred six months after owners had contracted for demolition of building but before work had begun; owners still had insurable interest in full value because they could still have canceled demolition); *Garcy Corp. v. Home*

*Insurance Co.*, 496 F.2d 479, 480–82 (7th Cir. 1974) (fire occurred after demolition contract was signed but before work began; owner still had insurable interest in full value because it could still have canceled demolition); *Edlin v. Security Insurance Co.*, 269 F.2d 159, 162–63 (7th Cir. 1959) (fire occurred while condemnation proceedings were pending; owners still retained legal title and control and had insurable interest in full value of property); *American Nat'l Bank & Trust Co. of Chicago v. Reserve Insurance Co.*, 187 N.E.2d 343, 347 (Ill. App. 1962) (same).

On the other side of this line we find *Lieberman v. Hartford Fire Insurance Co.*, 287 N.E.2d 38 (Ill. App. 1972), where the fire occurred after demolition work had actually begun, a distinction we noted in *Garcy Corp.*, 496 F.2d at 481–82. The owner in *Lieberman* had lost control over the condition of the building, so the court held he no longer had an insurable interest that he could protect against the loss. 287 N.E.2d at 40–41.

No Illinois appellate decision, to our knowledge, has considered the precise question here: what insurable interest an owner retains in a home after a judicial foreclosure sale and expiration of all redemption rights, but before confirmation of the sale under the procedures and rights established by the 1987 Illinois Mortgage Foreclosure Law, 735 ILCS 5/15-1101 et seq.

B. *Others' Insurable Interests*

Werner, the property owner, was not the only party with a stake in the property. Through the foreclosure proceedings, these others—the mortgagee and the buyer at the judicial sale—also stood to gain some advantage by the continued existence of the residence. Neither is a party to this lawsuit,

however. The record does not tell us anything about their interests or possible recoveries from insurance, so we need not worry here about when the mortgagee surrendered its insurable interest and when the buyer acquired an insurable interest.

C. *Werner's Insurable Interest*

As for Werner's insurable interest in his home after the judicial sale but before confirmation, both sides can point to some support in Illinois case law. Werner points out that when the fire occurred, he was still the owner of record. The cases on insurable interests when a loss occurs while condemnation proceedings are ongoing focus on the change of title at the end of the proceeding as the key moment when an owner loses an insurable interest. See *Edlin*, 269 F.2d at 162–63; *American Nat'l Bank & Trust Co.*, 187 N.E.2d at 347. Similarly, the demolition cases focus on whether demolition could still be canceled or had already begun when a loss occurred. *Murphy*, 2012 IL App (1st) 112143, ¶¶ 10–16, 978 N.E.2d at 652–53; *Chicago Title & Trust Co.*, 511 F.2d at 246–47; *Garcy Corp.*, 496 F.2d at 480–82; *Lieberman*, 287 N.E.2d at 40.

In response to the fact that the court had ordered foreclosure and the judicial sale had already occurred at the time of the fire, Werner asserts that the judicial sale had not yet been confirmed by the court and thus was not final or inevitable. In his view, the district court found correctly that he retained an insurable interest, but he objects to the court's decision to limit his insurable interest to the value of his temporary right of possession until 30 days after confirmation of the sale.

Auto-Owners argues, on the other side, that the district court correctly focused on what it considers the decisive fact under Illinois law: Werner's loss of his statutory and equitable rights of redemption before the fire. The insurer relies on a line of Illinois cases involving insured losses during foreclosure proceedings that found the owner had an insurable interest in the full value of the property as long as the owner still had a right of redemption. See *Stephens v. Illinois Mutual Fire Insurance Co.*, 43 Ill. 327, 331 (1867) ("[I]t is the settled law, that a mortgagor [owner] may insure to the full value of the property, and recover the sum insured, *if he had a right of redemption at the time of the loss*, even though the premises have been taken out of his hands by the mortgagee." (emphasis added)); *Rawson v. Bethesda Baptist Church*, 77 N.E. 560, 561–62 (Ill. 1906) (mortgagor [owner] had insurable interest in property during period of redemption); *Trustees of Schools v. St. Paul Fire & Marine Insurance Co.*, 129 N.E. 567, 568–69 (Ill. 1920) ("The mortgagor [owner] had an insurable interest to the extent of the full value of the property, and his interest continued after the sale *and during the redemption period*." (emphasis added)); *City of Chicago v. Maynur*, 329 N.E.2d 312, 314–15 (Ill. App. 1975) (foreclosure is not complete until redemption period has passed; while process of foreclosure was ongoing, mortgagee and mortgagor/owner continued to have insurable interests); see generally 3 Couch on Insurance § 42:31 (3d ed. 2024) ("mortgagor's insurable interest terminates with the expiration of the period for redemption").

More fundamentally, Auto-Owners asserts the general principle that insurance is intended to indemnify against loss. It should not put the insured in a better position than he would have been in if the loss had not occurred. Courts in

Illinois and elsewhere limit an owner's insurable interest to avoid creating incentives for destruction of insured properties. See *Chicago Title & Trust Co.*, 511 F.2d at 247–48 (limiting insurance recovery where insured building had been virtually worthless at time of destruction).

Werner responds to the line of redemption cases by arguing that the 1987 Illinois Mortgage Foreclosure Law undermines the reasoning of those cases. Under the statute, foreclosure is not complete, and the owner/mortgagor retains title and is not finally divested of his property rights, until confirmation of a judicial sale. See 735 ILCS 5/15-1509(a) & (b). That confirmation had not yet happened when Werner's home burned.

Werner also points out that, although confirmation is routine, it is not guaranteed. See *HSBC Bank USA, N.A. v. Townsend*, 793 F.3d 771, 777 (7th Cir. 2015). Quoting language from the *Murphy* case, he contends that a prediction that confirmation will occur requires impermissible "speculating about future, uncertain events." 2012 IL App (1st) 112143, ¶ 16, 978 N.E.2d at 652. He also finds support from the cases of fires with impending demolitions where the owners retained insurable interests so long as they could cancel the planned demolitions. See, e.g., *Garcy Corp.*, 496 F.2d at 481–82.

As noted above, our role as a federal court exercising diversity jurisdiction over claims arising under state law is to decide them as we believe the state's highest court would decide them. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *State Farm Mutual Auto. Insurance Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2001). We agree with the district court's prediction that the Illinois Supreme Court would hold that Werner did not have an insurable interest in the full value of

the residence. The flaw in his reasoning is that, although confirmation of this sale was not certain (and he had a right to possess the property until 30 days after the sale was confirmed), the sale meant that he no longer had a legal path to retain ownership of the property. Werner's statutory rights of reinstatement and redemption both had long expired, and his equitable right of redemption expired upon the judicial sale. See 735 ILCS 5/15-1602, 1603(b), & 1605. Once expired, those rights could not be revived. 735 ILCS 5/15-1603(c)(1) & 1605; see also *Aurora Loan Servs., Inc. v. Craddieth*, 442 F.3d 1018, 1028 (7th Cir. 2006) (applying these statutory provisions against reviving rights of redemption).

Accordingly, assessing Werner's insurable interest at the moment of loss, he was destined to lose title. If the initial judicial sale had not been confirmed, the state court would have simply held another sale (or if need be, a series of sales) until one was confirmed to satisfy the foreclosure judgment. See *Mortgage Electronic Registration Systems, Inc. v. Estrella*, 390 F.3d 522, 523–24 (7th Cir. 2004) (order refusing to confirm sale was not final appealable judgment; another sale would follow, and only final order confirming a sale would be appealable).

### 1.  *Loss of Control of Property*

Werner offers two remote possibilities that he says would have let him retain control of the property. First, he might have convinced mortgagee Nationstar to allow him to redeem the property as a matter of grace. See *Household Bank, FSB v. Lewis*, 890 N.E.2d 934, 939–40 (Ill. 2008). Second, if he could have shown that Nationstar "through fraud or misrepresentation, prevented [him] from raising his meritorious defenses to the complaint" or that he was "otherwise prevented from

protecting his property interests" during the foreclosure proceedings, then the sale and underlying foreclosure judgment could have been vacated. See *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶ 26, 999 N.E.2d 321, 329. Neither remote possibility establishes that Werner's interest in his property was its full value when it burned.

The first possibility—that Nationstar would permit late redemption as an act of grace—is too speculative a basis for an insurable interest. See *Murphy*, 2012 IL App (1st) 112143, ¶ 16, 978 N.E.2d at 653 (explaining insurable interest "should not be determined by speculating about future, uncertain events"). Under this late-redemption scenario, Werner still would not have had a *right* to retain title to the property; it would have depended entirely on an act of grace by Nationstar. See *Lewis*, 890 N.E.2d at 940. Werner has not cited authority indicating that an insurable interest can be based upon such a possible act of grace. We would have to engage in impermissible speculation to conclude that his insurable interest was the property's full value based on that remote possibility. See *Murphy*, 2012 IL App (1st) 112143, ¶ 16, 978 N.E.2d at 653.

Nor does our analysis change based on the rare possibility that the judicial sale and underlying judgment might be vacated. A court may allow a "borrower to circumvent the time limitations for redemption and reinstatement" and vacate the underlying judgment only in the "rare cases" where the borrower has both "a meritorious defense to the underlying judgment" and the lender stopped the borrower from raising it. *McCluskey*, 2013 IL 115469, ¶¶ 25–26, 999 N.E.2d at 328–29. Otherwise, the court "shall" either confirm the sale or set it aside and hold another if certain procedural

steps were missed. 735 ILCS 5/15-1508(b). Much like Federal Rule of Civil Procedure 60 and its state-law equivalents, this statutory safety valve empowers a court to prevent a miscarriage of justice. Nonetheless, Illinois courts teach that this possibility does not entitle an owner to avoid the time limits on redemption rights. See *McCluskey*, 2013 IL 115469, ¶ 25, 999 N.E.2d at 328–29; 735 ILCS 5/15-1508(b)(iv).

More specific to this case, Werner also has not identified any meritorious defense to the foreclosure judgment. Nor has he argued that Nationstar prevented him from raising any such defense during the foreclosure proceedings. To find that Werner somehow retained an insurable interest in the full value of his property because of the remote chance that the foreclosure judgment might be set aside, we would have to indulge in speculation on three points: (1) that he could have discovered a meritorious defense; (2) that Nationstar prevented him from raising the defense; and (3) the state court would have agreed and vacated not only the sale but also the underlying foreclosure judgment.

### 2. *Policies Underlying the Insurable Interest Doctrine*

Two more general considerations help persuade us that Illinois courts would hold that, at the time of the fire, Werner no longer had an insurable interest in the full value of the home. First, a ruling in Werner's favor would provide him with a windfall. The purpose of fire insurance is to put the insured in the same position as if the fire had not occurred. See, e.g., *Stendera v. State Farm Fire & Casualty Co.*, 2012 IL App (1st) 111462, ¶ 18, 973 N.E.2d 990, 994. In this case, if the fire had not occurred, Werner would have been able to occupy his home only until 30 days after the court confirmed the sale. See 735 ILCS 5/15-1701. At the moment of loss, he had no right to

retain title to the property. Receiving funds up to the full limits of his insurance policy would have placed him in a substantially better position than he would have been in otherwise. Illinois law does not allow such an outcome. See *Stendera*, 2012 IL App (1st) 111462, ¶¶ 18, 25–26, 973 N.E.2d at 994, 996 (reversing summary judgment for insurer based on factual disputes, but making clear that property owners were not entitled to "windfall"); *Chicago Title & Trust Co.*, 511 F.2d at 246–48 (sharply limiting scope of insurable interest to prevent "gross inequity" that would result if insured were able to recover policy limits far in excess of value of building already badly damaged before covered fire).

Second and relatedly, finding that a foreclosure-judgment debtor is legally entitled to an insurance recovery of the full value of the home—even though the debtor could not otherwise retain title—would create a moral hazard, creating an incentive for arson, negligence, or other property damage and destruction at a time when an owner has little left to lose. See *Farmers Auto. Insurance Ass'n v. St. Paul Mercury Insurance Co.*, 482 F.3d 976, 979 (7th Cir. 2007) (affirming summary judgment for insurer enforcing exclusion from liability coverage for violations of overtime wage laws: "No insurance company would knowingly write a policy that would enable the insured to trigger coverage any time it wanted a windfall."); *Chicago Title & Trust Co.*, 511 F.2d at 247 (insurable interest requirement is based on policies against wagering and rewarding, and thereby tempting destruction of property).

As the Illinois courts have repeatedly determined, the public policy considerations underlying the insurable interest doctrine guide courts to avoid creating such incentives. Insurance is supposed to offer indemnity against losses, not a

potentially profitable wager. See *Stendera*, 2012 IL App (1st) 111462, ¶ 18, 973 N.E.2d at 994 ("The law does not allow for an insurance loss to turn into a profit because doing so would encourage arson or neglect."); *Whitten v. Cincinnati Insurance Co.*, 544 N.E.2d 1169, 1174–75 (Ill. App. 1989) (plaintiffs in process of buying property had insurable interest but limited in amount to avoid possible windfall or unjust enrichment; allowing recovery for full amount of policy "might well provide an incentive for an unscrupulous home buyer to insure the property to be purchased, burn it, pay a reduced price for it, and then recover fully under the insurance policy").

To be clear, we do not suspect that Werner committed arson or was even negligent. All indications here point to a purely accidental fire. Nevertheless, in setting precedents that can influence future cases, courts in Illinois and elsewhere have used the doctrine of insurable interests to avoid creating such destructive incentives. As the Illinois Appellate Court wrote in *Whitten*: "We cannot encourage future fraud on insurance companies." 544 N.E.2d at 1175. Pursuant to *Erie Railroad*, we try to follow their lead.

We agree with the district court that Werner retained a very limited insurable interest in the property at the time of the fire. Auto-Owners does not contest the district court's finding that Werner was entitled to recover the value of his right to occupy his home until 30 days after the sale was confirmed. See 735 ILCS 5/15-1508(g) & 1701. As the district court explained, that was the innovation of the 1987 Illinois Mortgage Foreclosure Law most relevant here, and it means that his insurable interest did not disappear entirely when his rights of redemption expired. Werner does not contest the

court's valuation of that right based on estimated rental value of the home before the fire, nor does he suggest that he had any other right that the court ought to have considered in its valuation. The district court's eminently sensible judgment is therefore AFFIRMED.